EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSENFIELD & COMPANY, PLLC,

                                                                        Case No.: 1:21-cv-3858 (VM) (KHP)

                                    Plaintiff,

                -against-

TRACHTENBERG, RODES & FRIEDBERG LLP,          STAR DEFENDANTS' ANSWER
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR    WITH FIRST AMENDED
TOYOTA OF BAYSIDE), STAR AUTO SALES OF         COUNTERCLAIMS,
QUEENS, LLC (d/b/a STAR SUBARU), STAR          CROSS-CLAIMS, AND
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR         <u>THIRD-PARTY COMPLAINT</u>
NISSAN, INC (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

                                    Defendants.
-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

                        Defendants-Counterclaimants,

                -against-

ROSENFIELD & COMPANY, PLLC,

                        Plaintiff-Counterclaim-Defendant.
-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO

                                    1

CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

     Defendants-Cross-claimants,

   -against-

TRACHTENBERG, RODES & FRIEDBERG LLP,

     Defendant-Cross-claim-Defendants.
-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

     Third-Party Plaintiffs,

   -against-

BARRY J. FRIEDBERG and LEONARD A. RODES,

     Third-Party Defendants.
-----------------------------------------------------------------X

   Star Defendants-Third-Party Plaintiffs, Star Auto Sales of Bayside, Inc. d/b/a Star Toyota

of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star

Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler

Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto Sales of Queens

Village LLC d/b/a Star Mitsubishi (collectively hereinafter the "Star Defendants" or "Star Auto

Group"), by and through their attorneys, Milman Labuda Law Group PLLC, hereby submit this (i)

Answer to the Complaint of Rosenfield & Company, PLLC, (hereinafter "Rosenfield" or "Plaintiff") with Counterclaims; (ii) Answer to the cross-claims of Defendant, Trachtenberg, Rodes & Friedberg LLP (hereinafter "TRF" or "Defendant TRF") with cross-claims; and (iii) Third-Party Complaint against Third-Party Defendants, Barry J. Friedberg ("Friedberg") and Lenoard A. Rodes ("Rodes") (collectively hereinafter the "TRF Partners" or "Third-Party Defendants"), as follows:

## AS TO "NATURE OF THE ACTION"

1.     Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 1 of the Complaint concerning the basis of its claims, but Star Defendants deny any wrongdoing.

## AS TO "JURISDICTION AND VENUE"

2.     ¶ 2 of the Complaint purports to set forth legal conclusions to which no response is required.  To the extent that ¶ 2 sets forth any allegations of fact to which a response is required, Star Defendants deny those allegations.

3.     ¶ 3 of the Complaint purports to set forth legal conclusions to which no response is required.  To the extent that ¶ 3 sets forth any allegations of fact to which a response is required, Star Defendants deny those allegations.

4.     ¶ 4 of the Complaint purports to set forth legal conclusions to which no response is required.  To the extent that ¶ 4 sets forth any allegations of fact to which a response is required, Star Defendants deny those allegations.

## AS TO "PARTIES"

5.     Star Defendants deny knowledge or information sufficient to admit or deny the allegations set forth in ¶ 5 of the Complaint.

6.      Star Defendants deny knowledge or information sufficient to admit or deny the allegations set forth in ¶ 6 of the Complaint.

7.      Star Defendants admit the truth of the allegations contained in ¶ 7 of the Complaint.

8.      Star Defendants admit the truth of the allegations contained in ¶ 8 of the Complaint.

9.      Star Defendants admit the truth of the allegations contained in ¶ 9 of the Complaint.

10.     Star Defendants admit the truth of the allegations contained in ¶ 10 of the Complaint.

11.     Star Defendants admit the truth of the allegations contained in ¶ 11 of the Complaint.

12.     Star Defendants admit the truth of the allegations contained in ¶ 12 of the Complaint.

13.     Star Defendants deny the truth of the allegations contained in ¶ 13 of the Complaint.

## AS TO "GENERAL ALLEGATIONS"

14.     Star Defendants deny knowledge or information sufficient to admit or deny the allegation set forth in ¶ 14 of the Complaint that Rosenfield engages in the business of performing tax accounting, auditing, and financial litigation support services and state that Rosenfield held itself out to Star Defendants as engaging in said business.  Star Defendants admit the truth of the allegation set forth in ¶ 14 of the Complaint that, for years, Rosenfield provided tax and accounting services to Star Auto Group, its principals, and affiliated companies.

15.     Star Defendants deny knowledge or information sufficient to admit or deny the allegations set forth in ¶ 15 of the Complaint.

16.     Star Defendants deny the truth of the allegations contained in ¶ 16 of the Complaint.

17.     Star Defendants deny the truth of the allegations contained in ¶ 17 of the Complaint.

18.     Star Defendants deny the truth of the allegations contained in ¶ 18 of the Complaint.

19.     Star Defendants deny the truth of the allegations contained in ¶ 19 of the Complaint.

20.     Star Defendants deny all allegations contained in ¶ 20 of the Complaint except admit that TRF electronically signed the Engagement Letter and Rosenfield is not in possession of a copy of the Engagement Letter executed by a representative of Star Defendants.

21.     Star Defendants deny the truth of the allegations contained in ¶ 21 of the Complaint.

22.     Star Defendants deny the truth of the allegations contained in ¶ 22 of the Complaint.

23.     Star Defendants deny the truth of the allegations contained in ¶ 23 of the Complaint.

24.     Star Defendants deny the truth of the allegations contained in ¶ 24 of the Complaint.

25.     Star Defendants deny knowledge or information sufficient to admit or deny the allegations in ¶ 25 of the Complaint.

26.     Star Defendants deny information or belief sufficient to admit or deny the allegations set forth in ¶ 26 of the Complaint.

27.     Star Defendants deny the truth of the allegations contained in ¶ 27 of the Complaint.

28.     Star Defendants deny the truth of the allegations contained in ¶ 28 of the Complaint.

29.     Star Defendants deny the truth of the allegations contained in ¶ 29 of the Complaint.

30.     Star Defendants admit that Rosenfield filed a civil action as alleged in ¶ 30 of the Complaint.

31.     Star Defendants admit the truth of the allegations contained in ¶ 31 of the Complaint.

32.     Star Defendants deny the truth of the allegations contained in ¶ 32 of the Complaint but state that Star Automotive Group, Inc. is not affiliated with Star Defendants.

33. Star Defendants admit the truth of the allegations contained in ¶ 33 of the Complaint.

34. Star Defendants deny the truth of the allegations contained in ¶ 34 of the Complaint.

35. Star Defendants deny the truth of the allegations contained in ¶ 35 of the Complaint.

36. Star Defendants deny the truth of the allegations contained in ¶ 36 of the Complaint.

37. Star Defendants admit the truth of the allegations contained in ¶ 37 of the Complaint that Star Defendants have not paid for purported services rendered and deny information or belief sufficient to admit or deny that TRF has not paid the outstanding invoices.

38. Star Defendants deny the truth of the allegations contained in ¶ 38 of the Complaint.

39. Star Defendants deny information or belief sufficient to admit or deny the allegations set forth in ¶ 39 of the Complaint.

## AS TO "COUNT I – BREACH OF CONTRACT AGAINST STAR AUTO GROUP"

40. Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

41. Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 41 of the Complaint concerning the basis of its claims, but deny that Rosenfield is entitled to any relief and Star Defendants deny any liability.

42. Star Defendants deny the truth of the allegations contained in ¶ 42 of the Complaint.

43. Star Defendants deny the truth of the allegations contained in ¶ 43 of the Complaint.

44. Star Defendants deny the truth of the allegations contained in ¶ 44 of the Complaint.

45. Star Defendants deny the truth of the allegations contained in ¶ 45 of the Complaint.

## AS TO "COUNT II – UNJUST ENRICHMENT AGAINST STAR AUTO GROUP"

46.     Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

47.     Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 47 of the Complaint concerning the basis of its claims, but deny that Rosenfield is entitled to any relief and Star Defendants deny any liability.

48.     Star Defendants deny the truth of the allegations contained in ¶ 48 of the Complaint.

49.     Star Defendants deny the truth of the allegations contained in ¶ 49 of the Complaint.

50.     Star Defendants deny the truth of the allegations contained in ¶ 50 of the Complaint.

51.     Star Defendants deny the truth of the allegations contained in ¶ 51 of the Complaint.

52.     Star Defendants deny the truth of the allegations contained in ¶ 52 of the Complaint.

## AS TO "COUNT III – QUANTUM MERUIT AGAINST STAR AUTO GROUP"

53.     Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

54.     Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 54 of the Complaint concerning the basis of its claims, but deny that Rosenfield is entitled to any relief and Star Defendants deny any liability.

55.     Star Defendants deny the truth of the allegations contained in ¶ 55 of the Complaint.

56.     Star Defendants deny the truth of the allegations contained in ¶ 56 of the Complaint.

57.     Star Defendants deny the truth of the allegations contained in ¶ 57 of the Complaint.

58.     Star Defendants deny the truth of the allegations contained in ¶ 58 of the Complaint.

59.     Star Defendants deny the truth of the allegations contained in ¶ 59 of the Complaint.

## AS TO "COUNT IV – BREACH OF CONTRACT AGAINST TRACHTENBERG"

60.     Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

61.     Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 61 of the Complaint concerning the basis of its claims, but deny that Rosenfield is entitled to any relief and Star Defendants deny any liability.

62.     Star Defendants deny the truth of the allegations contained in ¶ 62 of the Complaint.

63.     Star Defendants deny the truth of the allegations contained in ¶ 63 of the Complaint.

64.     Star Defendants deny the truth of the allegations contained in ¶ 64 of the Complaint.

65.     Star Defendants deny the truth of the allegations contained in ¶ 65 of the Complaint.

## AS TO "COUNT V – UNJUST ENRICHMENT AGAINST TRACHTENBERG"

66.     Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

67.     With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 67 of the Complaint.

68.     With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 68 of the Complaint.

69.     With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 69 of the Complaint.

70. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 70 of the Complaint.

71. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 71 of the Complaint.

72. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 72 of the Complaint.

## AS TO "COUNT V – UNJUST ENRICHMENT AGAINST TRACHTENBERG"

73. Star Defendants repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

74. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants admit that Rosenfield makes certain allegations contained in ¶ 74 of the Complaint concerning the basis of its claims, but deny that Rosenfield is entitled to any relief and Star Defendants deny any liability.

75. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 75 of the Complaint.

76. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 76 of the Complaint.

77. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 77 of the Complaint.

78. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 78 of the Complaint.

79. With respect to claims against TRF, no answer is required by Star Defendants. Inasmuch as an Answer is required, Star Defendants deny the truth of the allegations contained in ¶ 79 of the Complaint.

## STAR DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

80. Rosenfield's claims, in whole or in part, fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

81. Rosenfield's claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

82. Rosenfield has been paid all monies owed to it.

### FOURTH AFFIRMATIVE DEFENSE

83. Rosenfield's claims are barred, in whole or in part, by the doctrines of waiver, release, laches, estoppel, unclean hands, and equitable and/or judicial estoppel.

## FIFTH AFFIRMATIVE DEFENSE

84.     Star Defendants have met and satisfied any and all obligations to Rosenfield and, therefore, this action is barred, in whole or in part, by the doctrine of accord and satisfaction.

## SIXTH AFFIRMATIVE DEFENSE

85.     Rosenfield's claims for damages are barred, in whole or in part, by Rosenfield's failure to mitigate damages.

## SEVENTH AFFIRMATIVE DEFENSE

86.     The causes of action herein have been waived and/or are barred by reason of Rosenfield's failure to give proper and timely notice to the Star Defendants of their claims.

## EIGHTH AFFIRMATIVE DEFENSE

87.     The claims in the Complaint are barred, in whole or in part, by *res judicata* and/or collateral estoppel.

## NINTH AFFIRMATIVE DEFENSE

88.     The Complaint is barred, in whole or in part, by the doctrine of payment.

## TENTH AFFIRMATIVE DEFENSE

89.     Rosenfield is not entitled to the payment of attorneys' fees by Star Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

90.     To the extent Star Defendants are found liable, Star Defendants are entitled to a set-off.

## TWELFTH AFFIRMATIVE DEFENSE

91.     Any damages alleged in this action (if any are in fact sustained) were caused by the acts or omissions of others, including Rosenfield, for which Star Defendants have no legal responsibility or culpability.

## THIRTEENTH AFFIRMATIVE DEFENSE

92.     This action is barred, in whole or in part, as a result of Rosenfield's own wrongful and dilatory conduct and its own actions or inactions.

## FOURTEENTH AFFIRMATIVE DEFENSE

93.     Rosenfield is precluded from receiving any relief by virtue of its own fraudulent conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE

94.     The Complaint fails to state a case of actual controversy between the parties.

## SIXTEENTH AFFIRMATIVE DEFENSE

95.     Rosenfield failed to establish the existence of a valid agreement with Star Defendants.

## SEVENTEENTH AFFIRMATIVE DEFENSE

96.     Rosenfield's purported contract is unenforceable as a matter of law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

97.     Rosenfield's purported contract is unenforceable because it is missing material and/or essential terms.

## NINETEENTH AFFIRMATIVE DEFENSE

98.     There is no privity of contract between Rosenfield and Star Defendants.

## TWENTIETH AFFIRMATIVE DEFENSE

99.     There was no meeting of the minds as required for the formation of any contract.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

100.     Rosenfield did not adequately perform under any alleged contract.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

101.    Rosenfield did not suffer damages.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

102.    Rosenfield failed to set forth the particular terms of any alleged contract that were allegedly breached by Star Defendants.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

103.    The amount(s) demanded in the Complaint by Rosenfield does not reflect either the agreed upon price or the reasonable value of the services allegedly sold and delivered.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

104.    Even assuming arguendo that there is a valid contract between Rosenfield and Star Defendants (which there is not), Star Defendants dispute the amount(s) which Rosenfield claims is owed and submits that the amount(s) claimed cannot be proven as a sum certain.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

105.    Star Defendants did not breach the contract(s), agreement(s) or understanding(s), if any, allegedly entered into with Rosenfield.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

106.    Star Defendants did not order the services for which recovery is sought.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

107.    Any conditions precedent contained in the purported agreement(s), contract(s), instrument(s) or understanding(s) upon which Rosenfield's claims are based have not been satisfied by Rosenfield.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

108.    If Rosenfield should prove the recoverable damages to any degree, Star Defendants are entitled to a off-set or reduction against any alleged damages.

## THIRTIETH AFFIRMATIVE DEFENSE

109.    If any statement of account of the alleged indebtedness was ever rendered to the Star Defendants, the Star Defendants timely and unequivocally disputed the said statement of account.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

110.    Rosenfield's claims are barred by the doctrines of course of conduct, course of dealing, course of performance, and/or usage of trade.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

111.    Rosenfield's claims are barred by the doctrines of substantial performance and material breach by Rosenfield.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

112.    The Complaint is barred, in whole or in part, by a lack of causation.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

113.    Damages alleged in the Complaint are speculative in nature.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

114.    This action is barred, in whole or in part, as a result of Rosenfield's own wrongful and dilatory conduct and its own actions or inactions, rendering the parties *in pari delicto*.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

115.    Star Defendants reserve the right to raise additional affirmative defenses and to supplement those asserted herein upon discovery of further information and investigation into

Rosenfield's claims. These additional defenses cannot be articulated at this time due to Rosenfield's failure to properly describe its claims with sufficient particularity in the complaint.

**WHEREFORE,** Star Auto Group demands judgment: (i) dismissing the Complaint in its entirety; (ii) awarding to Star Auto Group the costs and disbursements of this action; and (iii) granting such other relief as this Court deems just and proper.

## COUNTER-CLAIMS

1.     Star Defendants-Third-Party Plaintiffs, Star Auto Sales of Bayside, Inc. d/b/a Star Toyota of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto Sales of Queens Village LLC d/b/a Star Mitsubishi (collectively hereinafter the "Star Defendants" or "Star Auto Group"), as and for their counterclaims for breach of contract (three (3) separate contracts), breach of implied contract, promissory estoppel (quasi-contract), and fraudulent misrepresentation against Plaintiff, Rosenfield & Company, PLLC, (hereinafter "Rosenfield" or "Plaintiff"), allege as follows:

## JURISDICTION

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367(a) in that the counterclaims are so related to Rosenfield's claims so as to form the same case or controversy under Article III of the United States Constitution and Rule 13 of the Federal Rules of Civil Procedure.

## PARTIES

3.      Rosenfield is a Florida limited liability company with its principal place of business in Orlando, Florida. In addition to its office located in Orlando, Florida, Rosenfield also has an office in New York, New York.

4.      Star Auto Group repeats and realleges the allegation contained in ¶ 7 of the Complaint.

5.      Star Auto Group repeats and realleges the allegation contained in ¶ 8 of the Complaint.

6.      Star Auto Group repeats and realleges the allegation contained in ¶ 9 of the Complaint.

7.      Star Auto Group repeats and realleges the allegation contained in ¶ 10 of the Complaint.

8.      Star Auto Group repeats and realleges the allegation contained in ¶ 11 of the Complaint.

9.      Star Auto Group repeats and realleges the allegation contained in ¶ 12 of the Complaint.

10.     Star Auto Sales of Queens Village LLC is a New York limited liability company with its principal place of business in Queens Village, New York. Star Auto Sales of Queens Village LLC ceased operations in or around 2011.

## FACTUAL ALLEGATIONS

11.     In 2016, Michael Koufakis ("Koufakis"), a principal of Star Auto Group, discovered that Vivian Karouzakis ("Karouzakis"), an office manager/controller of several of Star Auto Group's dealerships, was embezzling money from Star Auto Group.

12.     On April 4, 2017, Karouzakis was arrested for embezzlement and related crimes discovered solely by Star Auto Group.

13.     After Karouzakis was arrested, Star Auto Group uncovered another fraudulent scheme created by Karouzakis and informed the District Attorney's office about same on April 7, 2017.

14.     On or around April 12, 2017, Star Auto Group uncovered additional thefts that were committed by Despina Theocharis ("Theocharis"), another office manager/controller of Star Auto Group, and at the suggestion of counsel, Star Auto Group decided to hire a forensic accountant to identify each scheme undertaken by Karouzakis and Theocharis to embezzle and uncover the extent of the embezzlement for each scheme in anticipation of litigation and to assist in the criminal prosecution against these former employees and any other perpetrators to these schemes.

15.     A few days later, on or about April 18, 2017, Star Auto Group hired Rosenfield.

16.     Star Auto Group retained Rosenfield based on Rosenfield's statements that (1) they have over twenty (20) years of experience in the automotive industry and (2) Rosenfield's managing partner, Ken Rosenfield, had a purported ownership interest and/or financial interest in an automotive dealership prior to creating Rosenfield & Company, PLLC.

17.     Notably, from in or around November 3, 2017 until in or around April 17, 2020, Rosenfield was Star Auto Group's accountant performing tax, accounting services, and work related to New York State sales tax audits under a separate agreement. The instant lawsuit does not involve any of Rosenfield's work regarding tax, accounting services, and work related to New York State sales tax audits.

18.     Star Auto Group hereby incorporates all allegations asserted in its cross-claims against TRF and Third-Party Complaint against Friedberg and Rodes, *infra*, as if fully set forth herein.

**The 4/20/17 Rosenfield Contract**

19.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

20.     In or around April 20, 2017, Star Auto Group entered into an agreement with Rosenfield under which Rosenfield agreed to provide forensic accounting services to Star Auto Group ("4/20/17 Rosenfield Contract") to support Star Auto Group's anticipated civil litigation against these former employees.

21.     The 4/20/17 Rosenfield Contract states that Rosenfield's customary practice in these types of engagements is to receive a retainer in the amount of $50,000.00 before commencing work.

22.     The 4/20/17 Rosenfield Contract does not identify any hourly rates and merely states its fees for these services will be $35,000.00 per week with at least four highly qualified staff working a full working week.

23.     The 4/20/17 Rosenfield Contract states that the services Rosenfield provides in this engagement will be "conducted in accordance with consulting standards established by the American Institute of Certified Public Accountants".

24.     The 4/20/17 Rosenfield Contract further states, *inter alia*, that:

a)      It is "anticipated that the engagement could take as long as 2 months" and any travel costs will be waived;

18

b)      Rosenfield will issue bills pursuant to this engagement on at least a monthly basis; and

c)      Rosenfield will prepare written reports when necessary to support its conclusions;

25.     The 4/20/17 Rosenfield Contract provides that "[Star Auto Group] have requested [Rosenfield's] professional forensic accounting services with respect to the employee theft that occurred at the Star Automotive Group dealerships. [Rosenfield] will prepare schedules […] to assist in determining the amount of theft loss. [Rosenfield] will also perform a test for accuracy of the balance sheet accounts and to conduct an internal control study of both the accounting and computer systems. […] [Rosenfield] shall undertake no work under this agreement unless specifically requested to do so by [Star Auto Group]."

26.     Star paid the $50,000.00 retainer on April 24, 2017 which was to be applied toward payment of Rosenfield's final invoice in connection with this engagement.

27.     Rosenfield issued invoices to Star Auto Group on May 3, 8, 15 and 22 of 2017 (totaling $126,000.00 – but subsequently discounted to $106,000.00) for services rendered in connection with forensic accounting as specified in the 4/20/17 Rosenfield Contract that were all paid by Star Auto Group.

28.     Rosenfield improperly applied the $50,000.00 retainer and never returned it to Star Auto Group.

**The 5/25/17 Rosenfield Contract**

29.     In or around May 25, 2017, Rosenfield and Star Auto Group terminated the 4/20/17 Rosenfield Contract and entered into an oral agreement to provide the same forensic accounting services described in Paragraph ¶ 25 but now on an hourly basis ("5/25/17 Rosenfield Contract").

30.     Thereafter, later in 2017, Star also requested Rosenfield to perform forensic accounting services vis-à-vis, Voynow, Bayard, Whyte & Company LLP ("Voynow").

31.     Star Auto Group paid approximately $400,000.00 under the 5/25/17 Rosenfield Contract.

32.     On April 17, 2020, Star Auto Group terminated the 5/25/17 Rosenfield Contract.

**Rosenfield breaches its Contracts with Star Auto Group**

33.     Initially, Rosenfield breached the 4/20/17 Rosenfield Contract when it failed to work a "full working week" and failed to provide "four highly qualified staff" as required under the 4/20/17 Rosenfield Contract.

34.     Rosenfield also breached the 4/20/17 Rosenfield Contract by improperly applying the $50,000.00 retainer and never returned it to Star Auto Group.

35.     Moreover, Rosenfield failed to perform forensic accounting services in accordance with the terms of both the 4/20/17 and 5/25/17 Rosenfield Contracts as described in Paragraph ¶ 25.

36.     Rosenfield breached these contracts by, *inter alia,* (i) excessively and unreasonably billing Star Auto Group for its services; (ii) failing to perform the forensic accounting work it was obligated to perform under these contracts; and (iii) billing for work not requested by Star Auto Group.

37.     Despite paying Rosenfield approximately $500,000.00 in total under both contracts, the forensic accounting work performed by Rosenfield was of such a poor quality that Star Auto Group cannot use or rely on any of Rosenfield's work and caused Star Auto Group to retain other forensic accountants to perform the work that Rosenfield failed to perform, but for which Rosenfield was paid.

38.   Specifically, Rosenfield breached its contracts by:

    a. Failing to "prepare schedules" as required under both contracts;

    b. Failing to perform any "tests for accuracy of the balance sheet accounts" as required under both contracts;

    c. Failing to "conduct an internal control study of both the accounting and computer systems" as required under both contracts;

    d. Failing to determine "the amount of theft" against by Star Auto Group's employee as required under both contracts;

    e. Failing to uncover new schemes committed by Star Auto Group's former employees (which were later uncovered);

    f. Failing to document and determine the extent of damages for schemes Star Auto Group uncovered on their own about which Star Auto Group notified Rosenfield;

    g. Overbilling for a search for a contractor to help access the data on Star Auto Group's backup tapes – without any results;

    h. Failing to produce a competent report or make conclusions;

    i. Failing to have dealership management software from The Reynolds and Reynolds Company installed on computers Rosenfield's employees used despite representing themselves to be "experts" in the automotive industry; and

    j. Performing work not specifically requested to be done by Star Auto Group.

39.   Whenever Rosenfield provided a report to Star Auto Group, the reports contained numerous errors and issues. Rosenfield's most recent report was provided to Star Auto Group on December 4, 2019 which contained numerous errors and issues such as:

    a. Incorrectly stating that every intercompany check between Star Toyota and Star Nissan was fraudulent despite Rosenfield's knowledge that certain intercompany checks were legitimate;

    b. Incorrectly identifying fraudulent schemes;

    c. Stating there was theft from Star Auto Group's "factory incentive accounts" but failing to discover either of the two (2) schemes actually committed by Star Auto Group's former employee, Carmen Jones ("Jones"), out of this same account, for which Star Auto Group sued Jones;

    d. Incorrectly stating that there were "several suspicious transactions that could result in approximately $206,180.00 of fraudulent activity" related to employee advances. Whereas the first report Rosenfield provided to Star Auto Group on June 2, 2017 contains the same exact sentence, evidencing a copy-and-paste job with poor attention to detail;

    e. Incorrectly stating that "there is no record of payment" by Star Auto Group's former employee, Theocharis, receiving an employee advance of $30,000.00, despite Star Auto Group providing Rosenfield with a $25,000.00 check from Theocharis to Star Auto Group, along with a corresponding journal entry;

    f.   Incorrectly stating that Star Auto Group's current employee, Jacqueline Cutillo, obtained a vehicle through a general journal entry while not identifying other former employees who did in fact have general journal entries corresponding to their vehicle purchase–other than Jones which was originally brought to Rosenfield's attention by Star Auto Group;

    g.   Failing to provide any additional detail in Rosenfield's December 4, 2019 report regarding "vehicle sales to employees with no documentation of cash receipts" despite mentioning the same information in its June 2, 2017 report;

    h.   Incorrectly stating that there are vendor numbers with more than one vendor assigned but failing to specifically identify any vendors, including Nissan Motors and Staples, both of which had two separate vendor numbers. (Star Auto Group notified Rosenfield about embezzlement schemes engaged in by their former employees that Star Auto Group uncovered involving these vendors but Rosenfield still failed to include them in its December 4, 2019 report);

    i.   Failing to include several embezzlement schemes in its December 4, 2019 report which Star Auto Group previously notified Rosenfield, including, but not limited to, a Star Subaru embezzlement scheme involving warranty claims replacing customer deposits. (This embezzlement scheme was originally mentioned in a report by Rosenfield dated May 29, 2018, but was completely omitted from Rosenfield's December 4, 2019 report); and

    j.   Identifying several embezzlement schemes that were not, in fact, embezzlement schemes.

40.    As another example of the poor quality of Rosenfield's work, on January 24, 2020, a private investigator retained by MLLG met with Ken Rosenfield at Rosenfield's office in Orlando, Florida. During this meeting, Rosenfield provided specific details of Theocharis' improper conduct. On January 26, 2020, the private investigator sent a recap email to Rosenfield and Star Auto Group outlining what was discussed during the meeting on January 24, 2020. One specific issue included in the January 26, 2020 email was that Rosenfield stated that that from approximately 2014 to 2017, cash was being stolen from Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge's ("Star Chrysler") bank deposits "every day and sometimes twice a day" Rosenfield had billed tens of thousands of dollars in an effort to support that this theft occurred and reconfirmed to the private investigator that this theft was occurring each day during this time period. Rosenfield claimed that its primary evidence that this scheme, in fact, occurred "every day and sometimes twice a day" over a period of years was its examination and analysis of the Star

Chrysler's "cash boards". However, Rosenfield never bothered to examine the primary banking and dealership accounting files, specifically the "edit lists". Had Rosenfield taken this basic step, Rosenfield would have seen the precise amount consisting of not only cash, but checks and credit cards, coming into Star Chrysler was in fact deposited every day in Star Chrysler's bank account. When the private investigator presented details of Rosenfield's allegations to Star Auto Group's office manager, she was able to respond to the private investigator the next day with evidence completely debunking Rosenfield's allegation.

41.     The allegations contained in the above paragraphs are only a few of many examples showing how the 4/20/17 and 5/25/17 Rosenfield Contracts were breached by Rosenfield, and is by no means an exhaustive list of Rosenfield's extensive failures to perform under the parties' agreements.

42.     Many of Rosenfield's invoices state that certain work was performed, but in a vast majority of cases, there is no documentation to support that this work was actually done.

43.     Star Auto Group relied on Rosenfield's expertise as forensic accountants in the automotive industry and, in good faith, paid all invoices Rosenfield issued to Star Auto Group arising out of the 4/20/17 and 5/25/17 Rosenfield Contracts.

44.     Once Star Auto Group learned that the work performed by Rosenfield was so poor that Star Auto Group could not use or rely on any of this work, Star Auto Group retained and paid other forensic accountants to do work that Rosenfield failed to perform but for which it had already been paid to perform.

45.     Star Auto Group relied on embezzlement schemes Rosenfield uncovered by including them in lawsuits Star Auto Group filed against their former accountant and former employees which Star Auto Group has now learned were not embezzlement schemes, including

but not limited to, the schemes Rosenfield identified involving employees with multiple employee identification numbers and involving general journal entries for Star Chrysler.

46.     Based on the above allegations, Rosenfield breached the 4/20/17 and 5/25/17 Rosenfield Contracts and engaged in fraud for which Star Auto Group is entitled to damages for excessive monies paid to Rosenfield and all consequential damages incurred as a result of Rosenfield's failure to perform under the contracts and all available remedies at law.

**Breach of Contract Dated March 8, 2019**

47.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

48.     In or around March 8, 2019, Star Auto Group entered into another agreement with Rosenfield ("3/8/19 Rosenfield Contract").

49.     The 3/8/19 Rosenfield Contract does not cover any work related to a legal proceeding Star Auto Group commenced against Voynow in the United States District Court Eastern District of New York (Case No.: 18-cv-5775) ("Voynow Litigation") commencing on December 1, 2017.

50.     Under the 3/8/19 Rosenfield Contract, Star engaged Rosenfield to provide "investigation, prosecution, litigation support services, and expert testimony inclusive of working with Milman Labuda Law Group PLLC […] with respect to any and all schemes committed or participated [in] by former employees [of Star Auto Group] including Douglas Filardo, Francine Filardo, Vivian Karouzakis, Despina Theocharis and Carmen Jones, inclusive of their families, related persons, and/or entities."

51.     The hourly rates under the 3/8/19 Rosenfield Contract ranged from $130.00 to $550.00 per hour; with a specific rate for Dan Jamnik of $275.00 per hour.

52.     Rosenfield never issued any invoice for services performed under the 3/8/19 Rosenfield Contract.

53.     The 3/8/19 Rosenfield Contract states "[Rosenfield's] customary practice in these types of engagements is to receive a retainer of the $15,000 before commencing work" and "[T]his retainer will be billed against work as we go and replenished upon approval of client.

54.     Pursuant to the 3/8/19 Rosenfield Contract, when it was executed by the parties, Star Auto Group paid a $15,000.00 retainer deposit to Rosenfield.

55.     Rosenfield never performed any work covered by the 3/8/19 Rosenfield Contract.

56.     Because no work was performed by Rosenfield under the 3/8/19 Contract, the $15,000 retainer was never used and must be returned to Star.

57.     Rosenfield improperly and unethically attempted to apply the $15,000.00 retainer deposit to invoices for work Rosenfield allegedly performed covered by other agreements between the parties.  On November 18, 2019, Star Auto Group, through counsel, notified Rosenfield that this was improper.

58.     On November 26, 2019, Rosenfield responded to the November 18, 2019 letter and agreed with Star Auto Group but never returned the $15,000.00.

59.     On April 17, 2020, Star Auto Group terminated the 3/8/19 Rosenfield Contract.

60.     Since Rosenfield failed to perform any work covered by the 3/8/19 Rosenfield Contract, when the agreement was terminated on April 17, 2020, Rosenfield was obligated to return the $15,000.00 retainer deposit to Star Auto Group.

61.     Star Auto Group has demanded that Rosenfield return the $15,000.00 unused retainer deposit, but Rosenfield has failed to return it.

62.     Accordingly, Rosenfield breached its contract with Star Auto Group causing Star Auto Group damages of $15,000.00.

## FIRST COUNTERCLAIM AGAINST ROSENFIELD
### (Breach of the 4/20/17 Rosenfield Contract)

63.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

64.     Rosenfield breached the 4/20/17 Rosenfield Contract with Star Auto Group by overbilling under the contract, improperly applying the $50,000.00 retainer and never returning it, using failing to perform services under the contract, incorrectly identifying fraudulent schemes and billing for work not requested by Star Auto Group.

65.     Star Auto Group was damaged by Rosenfield's conduct.

## SECOND COUNTERCLAIM AGAINST ROSENFIELD
### (Breach of the 5/25/17 Rosenfield Contract)

66.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

67.     Rosenfield breached the 5/25/17 Rosenfield Contract with Star Auto Group by overbilling under the contract, failing to perform services under the contract, incorrectly identifying fraudulent schemes and billing for work not requested by Star Auto Group.

68.     Star Auto Group was damaged by Rosenfield's conduct.

## THIRD COUNTERCLAIM AGAINST ROSENFIELD
### (Breach of Implied Contract Dated May 25, 2017)
### (In the Alternative to Counts II and IV)

69.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

70.     Rosenfield's assented to an implied-in-fact contract with Star Auto Group to perform forensic accounting services in accordance with the terms of both the 5/25/17 Rosenfield Contract as described in Paragraph ¶ 25 based on the parties' course of dealings.

71.     Star Auto Group paid Rosenfield in good faith and these payments were done with the knowledge of Rosenfield, who ultimately accepted to perform the requested forensic accounting services for said payments. Rosenfield understood it would provide *inter alia*, the forensic accounting services described in Paragraph ¶ 25 in exchange for the payments made by Star Auto Group.

72.     Rosenfield breached the implied-in-fact contract with Rosenfield by overbilling under the contract, failing to perform services under the contract, incorrectly identifying fraudulent schemes and billing for work not requested by Star Auto Group.

73.     Star Auto Group was damaged by Rosenfield's conduct.

### FOURTH COUNTERCLAIM AGAINST ROSENFIELD
**(Breach of Quasi-Contract Dated May 25, 2017 – Promissory Estoppel)**
**(In the Alternative to Counts II and III)**

74.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

75.     Rosenfield made a clear and unambiguous promise to Star Auto Group to provide *inter alia*, the forensic accounting services described in Paragraph ¶ 25 in exchange for the payments made by Star Auto Group.

76.     Star Auto Group reasonably relied on this promise to its detriment by paying for these services that were ultimately never provided by Rosenfield.

77.     As a result of Star Auto Group's reasonable and foreseeable reliance, Star Auto Group sustained injuries.

78.     For the reasons set forth above, Rosenfield is liable to Star Auto Group for damages.

## FIFTH COUNTERCLAIM AGAINST ROSENFIELD
### (Breach of the 3/8/19 Rosenfield Contract)

79.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

80.     Rosenfield breached the 3/8/19 Rosenfield Contract with Star Auto Group by failing to return the $15,000.00 deposit.

81.     Star Auto Group was damaged by Rosenfield's conduct.

## SIXTH COUNTERCLAIM AGAINST ROSENFIELD
### (Fraudulent Misrepresentation)

82.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

83.     As its accountant, Rosenfield owed a fiduciary duty to Star Auto Group.

84.     Rosenfield made material misrepresentations of fact to Star Auto Group regarding its work and bills which were made intentionally in order to defraud or mislead Star Auto Group.

85.     Ken Rosenfield made the following fraudulent statements:

- informing Star Auto Group that certain theft schemes occurred which did not occur; and
- informing the district attorney, the police, and Star that it would provide reports proving that Star's employees committed various schemes but never providing any such documentation;

86.     These fraudulent statements were made in reports Rosenfield and Ken Rosenfield provided to Star which include but are not limited to on June 2, 2017, June 8, 2018, November 21, 2018, May 29, 2019, and December 4, 2019; and

87.     These statements were also made to Star by Ken Rosenfield during meetings he had with Michael Koufakis, a principle of Star, which include but are not limited to on September 27, 2017, September 29, 2018, December 8, 2017, June 14, 2018, December 20, 2018, February 7, 2019, March 27, 2019, and November 13, 2019.

88.     Star Auto Group reasonably relied on the misrepresentations and suffered damages as a result of its reliance on Rosenfield's misrepresentations.

89.     Star Auto Group was damaged by Rosenfield's conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Star Auto Group demands the following:

a.  Judgment on all counterclaims against Rosenfield in an amount to be established at trial plus pre and post-judgment interest, costs, attorney's fees, and punitive damages for Star Auto Group's counterclaims; and

b.  Together with such other and further relief as the Court deems just and proper.

## **STAR AUTO GROUP'S ANSWER TO TRF'S CROSS-CLAIMS**

## **AS TO "FIRST CROSS-CLAIM AGAINST THE STAR AUTO GROUP"**

1.     Star Defendants incorporate and reallege the foregoing answering allegations in connection with this First Cross-Claim.

2.     Star Defendants admit the truth of the allegations contained in ¶ 2 of the Cross-Claims.

3.     Star Defendants deny the truth of the allegations contained in ¶ 3 of the Cross-Claims.

4.     Star Defendants deny the truth of the allegations contained in ¶ 4 of the Cross-Claims.

5.      Star Defendants deny the truth of the allegations contained in ¶ 5 of the Cross-Claims.

6.      Star Defendants admit the truth of the allegation contained in ¶ 6 of the Cross-Claims that TRF denies that Rosenfield is entitled to any recovery in this action against TRF or the Star Auto Group as alleged and admit the truth of the allegation contained in ¶ 6 of the Cross-Claims that Star Auto Group rightfully and properly refused to pay Rosenfield.

7.      Star Defendants deny the truth of the allegations contained in ¶ 7 of the Cross-Claims.

8.      Star Defendants deny the truth of the allegations contained in ¶ 8 of the Cross-Claims.

### AS TO "SECOND CROSS-CLAIM AGAINST THE STAR AUTO GROUP"

9.      Star Defendants incorporate and reallege the foregoing answering allegations in connection with this Second Cross-Claim. Star Defendants also repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

10.     Star Defendants admit the truth of the allegations contained in ¶ 10 of the Cross-Claims.

11.     Star Defendants admit the truth of the allegations contained in ¶ 11 of the Cross-Claims.

12.     Star Defendants admit the truth of the allegations contained in ¶ 12 of the Cross-Claims.

13.     Star Defendants deny the truth of the allegations contained in ¶ 13 of the Cross-Claims.

14.      Star Defendants deny the truth of the allegations contained in ¶ 14 of the Cross-Claims.

15.      Star Defendants deny the truth of the allegations contained in ¶ 15 of the Cross-Claims.

16.      Star Defendants deny the truth of the allegations contained in ¶ 16 of the Cross-Claims.

### AS TO "THIRD CROSS-CLAIM AGAINST THE STAR AUTO GROUP"

17.      Star Defendants incorporate and reallege the foregoing answering allegations in connection with this Second Cross-Claim. Star Defendants also repeat and reallege each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

18.      Star Defendants deny the truth of the allegations contained in ¶ 18 of the Cross-Claims.

19.      Star Defendants deny the truth of the allegations contained in ¶ 19 of the Cross-Claims.

20.      Star Defendants deny the truth of the allegations contained in ¶ 20 of the Cross-Claims.

### STAR AUTO GROUP'S AFFIRMATIVE DEFENSES TO CROSS-CLAIMS

### FIRST AFFIRMATIVE DEFENSE

21.      TRF's cross-claims, in whole or in part, fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

22.     TRF's cross-claims are barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

23.     TRF has been paid all monies owed to it.

## FOURTH AFFIRMATIVE DEFENSE

24.     TRF's cross-claims are barred, in whole or in part, by the doctrines of waiver, release, laches, estoppel, unclean hands, and equitable and/or judicial estoppel.

## FIFTH AFFIRMATIVE DEFENSE

25.     Star Auto Group has met and satisfied any and all obligations to TRF and, therefore, these cross-claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

## SIXTH AFFIRMATIVE DEFENSE

26.     TRF's cross-claims for damages are barred, in whole or in part, by TRF's failure to mitigate damages.

## SEVENTH AFFIRMATIVE DEFENSE

27.     The cross-claims herein have been waived and/or are barred by reason of TRF's failure to give proper and timely notice to the Star Auto Group of their cross-claims.

## EIGHTH AFFIRMATIVE DEFENSE

28.     The cross-claims are barred, in whole or in part, by *res judicata* and/or collateral estoppel.

## NINTH AFFIRMATIVE DEFENSE

29.     The cross-claims are barred, in whole or in part, by the doctrine of payment.

### TENTH AFFIRMATIVE DEFENSE

30.     TRF is not entitled to the payment of attorneys' fees by Star Auto Group.

### ELEVENTH AFFIRMATIVE DEFENSE

31.     To the extent Star Auto Group is found liable, Star Auto Group is entitled to a set-off.

### TWELFTH AFFIRMATIVE DEFENSE

32.     Any damages alleged in these cross-claims (if any are in fact sustained) were caused by the acts or omissions of others, including TRF, for which Star Auto Group has no legal responsibility or culpability.

### THIRTEENTH AFFIRMATIVE DEFENSE

33.     These cross-claims are barred, in whole or in part, as a result of TRF's own wrongful and dilatory conduct and its own actions or inactions.

### FOURTEENTH AFFIRMATIVE DEFENSE

34.     TRF is precluded from receiving any relief by virtue of its own fraudulent conduct.

### FIFTEENTH AFFIRMATIVE DEFENSE

35.     The cross-claims fail to state a case of actual controversy between the parties.

### SIXTEENTH AFFIRMATIVE DEFENSE

36.     TRF failed to establish the existence of a valid agreement with Star Auto Group.

### SEVENTEENTH AFFIRMATIVE DEFENSE

37.     TRF's purported contract is unenforceable as a matter of law.

### EIGHTEENTH AFFIRMATIVE DEFENSE

38.     TRF's purported contract is unenforceable because it is missing material and/or essential terms.

## NINETEENTH AFFIRMATIVE DEFENSE

39.     There is no privity of contract between TRF and Star Auto Group.

## TWENTIETH AFFIRMATIVE DEFENSE

40.     There was no meeting of the minds as required for the formation of any contract.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

41.     TRF did not adequately perform under any alleged contract.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

42.     TRF did not suffer damages.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

43.     TRF failed to set forth the particular terms of any alleged contract that were allegedly breached by Star Auto Group.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

44.     The amount(s) demanded in the cross-claims by TRF does not reflect either the agreed upon price or the reasonable value of the services allegedly sold and delivered.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

45.     Even assuming arguendo that there is a valid contract between TRF and Star Auto Group (which there is not), Star Auto Group disputes the amount(s) which TRF claims is owed and submits that the amount(s) claimed cannot be proven as a sum certain.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

46.     Star Auto Group did not breach the contract(s), agreement(s) or understanding(s), if any, allegedly entered into with TRF.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

47.     Star Auto Group did not order the services for which recovery is sought.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

48.     Any conditions precedent contained in the purported agreement(s), contract(s), instrument(s) or understanding(s) upon which TRF's cross-claims are based have not been satisfied by TRF.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

49.     If TRF should prove the recoverable damages to any degree, Star Auto Group is entitled to a off-set or reduction against any alleged damages.

### THIRTIETH AFFIRMATIVE DEFENSE

50.     If any statement of account of the alleged indebtedness was ever rendered to Star Auto Group, Star Auto Group timely and unequivocally disputed the said statement of account.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

51.     TRF's cross-claims are barred by the doctrines of course of conduct, course of dealing, course of performance, and/or usage of trade.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

52.     TRF's cross-claims are barred by the doctrines of substantial performance and material breach by TRF.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

53.     The cross-claims are barred, in whole or in part, by a lack of causation.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

54.     Damages alleged in the cross-claims are speculative in nature.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

55. These cross-claims are barred, in whole or in part, as a result of TRF's own wrongful and dilatory conduct and its own actions or inactions, rendering the parties *in pari delicto*.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

56. Star Auto Group reserves the right to raise additional affirmative defenses and to supplement those asserted herein upon discovery of further information and investigation into TRF's cross-claims. These additional defenses cannot be articulated at this time due to TRF's failure to properly describe its cross-claims with sufficient particularity in the complaint.

**WHEREFORE,** Star Auto Group demands judgment: (i) dismissing TRF's cross-claims in their entirety; (ii) awarding to Star Auto Group the costs and disbursements of this action; and (iii) granting such other relief as this Court deems just and proper.

## STAR AUTO GROUP'S CROSS-CLAIMS AGAINST TRACHTENBERG, RODES & FRIEDBERG LLP AND THIRD-PARTY CLAIMS AGAINST BARRY J. FRIEDBERG AND LEONARD A. RODES

1. Star Defendants-Third-Party Plaintiffs, Star Auto Sales of Bayside, Inc. d/b/a Star Toyota of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto Sales of Queens Village LLC d/b/a Star Mitsubishi (collectively hereinafter the "Star Defendants", "Third-Party Plaintiffs", or "Star Auto Group"), by and through their attorneys, Milman Labuda Law Group PLLC ("MLLG"), hereby submit their (a) cross-claims against Defendant, Trachtenberg, Rodes & Friedberg LLP (hereinafter " TRF" or "Defendant TRF"); and (b) third-party claims against Barry J. Friedberg ("Friedberg") and Leonard A, Rodes ("Rodes") (collectively hereinafter the "TRF Partners"), allege as follows:

2.  Star Auto Group brings these cross-claims against TRF for (1) contribution and/or indemnification; (2) breach of contract concerning its retainer dated December 1, 2017 for (i) overbilling and (ii) violating the implied promise of due care for poor performance under the contract; and (3) fraudulent misrepresentation.

3.  Star Auto Group brings this Third-Party Complaint against TRF Partners for (1) contribution and/or indemnification arising out of the allegations alleged in the Complaint; and (2) fraudulent misrepresentation. Additionally, Star Auto Group brings this Third-Party Complaint against Friedberg for (3) breach of the contract dated December 1, 2017 for (i) overbilling and (ii) violating the implied promise of due care for poor performance under the contract.

4.  Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

5.  Star Auto Group, as and for their cross-claims against Defendant TRF and third-party claims against TRF Partners, allege as follows:

## JURISDICTION

6.  With regard to the cross-claims, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 in that these are ancillary cross-clams under Rule 13(g) of the Federal Rules of Civil Procedure ("FRCP") which arise out of the same transaction or occurrence that is the subject matter described in the Complaint, Star Auto Group's counterclaims, and/or TRF's cross-claims are so related so as to form the same case or controversy under Article III of the United States Constitution and Rule 13 of the Federal Rules of Civil Procedure.

7.  With regard to the third-party claims, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 in that these are ancillary third-party claims under Rule 14(a) of the FRCP which arise out of the same transaction or occurrence that is the subject matter described in the

Complaint, Star Auto Group's counterclaims, Star Auto Group's cross-claims, and/or TRF's cross-claims are so related so as to form the same case or controversy under Article III of the United States Constitution and Rule 14 of the Federal Rules of Civil Procedure.

8.      This Court has supplemental jurisdiction over the Star Auto Group's state law cross-claims and third-party claims pursuant to 28 U.S.C. § 1367 because the state law cross-claims and third-party claims arise out of the same case or controversy.


## **PARTIES**

9.      TRF is a New York limited liability partnership with its principal place of business located at 420 Lexington Avenue, Suite 2800, New York, New York. TRF also had an office located at 545 Fifth Avenue, Suite 640, New York, New York.

10.      According to its website, as of June 30, 2021, TRF ceased providing legal services or otherwise conducting business.

11.      As of July 30, 2021, TRF's entity status is listed as "active" on the New York State Department of State, Division of Corporations' website.

12.      Friedberg resides in the State of New York.

13.      Friedberg was a partner of TRF throughout TRF's engagement with Star Auto Group until TRF ceased providing legal services.

14.      Upon information and belief, Friedberg is still a partner of TRF.

15.      Since in or around July 1, 2021, Friedberg is the principal of Friedberg PLLC.

16.      Rodes resides in the State of New York.

17.      Rodes was a partner of TRF throughout TRF's engagement with Star Auto Group.

18.      Upon information and belief, Rodes is still a partner of TRF.

19.     Since in or around July 1, 2021, Rodes is the principal of The Rodes Firm PLLC.

20.     Star Auto Group repeats and realleges the allegation contained in ¶ 7 of the Complaint.

21.     Star Auto Group repeats and realleges the allegation contained in ¶ 8 of the Complaint.

22.     Star Auto Group repeats and realleges the allegation contained in ¶ 9 of the Complaint.

23.     Star Auto Group repeats and realleges the allegation contained in ¶ 10 of the Complaint.

24.     Star Auto Group repeats and realleges the allegation contained in ¶ 11 of the Complaint.

25.     Star Auto Group repeats and realleges the allegation contained in ¶ 12 of the Complaint.

26.     Star Auto Sales of Queens Village LLC is a New York limited liability company with its principal place of business in Queens Village, New York. Star Auto Sales of Queens Village LLC ceased operations in or around 2011.

## FACTUAL ALLEGATIONS

27.     In or around December 1, 2017, Star Auto Group entered into an agreement with TRF, (hereinafter the "TRF Engagement Letter").

28.     The Agreement provides that TRF will represent Star Auto Group in a legal proceeding against Star Auto Group's former accountants, Voynow, Bayard, Whyte & Company LLP ("Voynow").

29. The TRF Engagement Letter provides, in relevant part, that TRF will not incur any material expense without Star Auto Group's prior approval.

30. On October 24, 2019, without Star Auto Group's prior approval, TRF and Friedberg emailed a draft engagement letter ("Engagement Letter") to Rosenfield and Star Auto Group concerning Rosenfield potentially serving as a consulting expert in Star Auto Group's legal proceeding against Voynow.

31. Later that day, on October 24, 2019, Ken Rosenfield responded via email that Rosenfield was "fine" with the terms of the Engagement Letter but stated "as with all litigation support requirements of our insurance company, we will require a retainer that is applied to the final invoice. As Mike and his entities are a significant client to our firm, our retainer will be minimal at $5,000."

32. Star Auto Group never agreed to the terms of the Engagement Letter, never signed the Engagement Letter, and never paid the $5,000.00 retainer required by Rosenfield to perform work under the Engagement Letter.

33. TRF and TRF Partners never received Star Auto Group's prior approval required pursuant to the TRF Engagement Letter to retain Rosenfield.

34. TRF and TRF Partners never followed up to ask Star Auto Group if it agreed to the terms of the Engagement Letter.

35. Star Auto Group has consistently stated that it never agreed to the Engagement Letter.

36. Star Auto Group never told Rosenfield that it agreed to the terms of the Engagement Letter, paid the $5,000.00 retainer, or signed the Engagement Letter.

37.     Star Auto Group never told TRF or TRF Partners that it agreed to the terms of the Engagement Letter, paid the $5,000.00 retainer, or signed the Engagement Letter.

38.     TRF and/or TRF Partners never notified Rosenfield that Star Auto Group agreed to the terms of the Engagement Letter, paid the $5,000.00 retainer, or signed the Engagement Letter.

39.     Rosenfield never notified TRF and/or TRF Partners that Star Auto Group agreed to the terms of the Engagement Letter, paid the $5,000.00 retainer, or signed the Engagement Letter.

40.     Star Auto Group never acted in any manner that would indicate that it agreed to the Engagement Letter.

41.     Prior to TRF emailing the Engagement Letter on October 24, 2019, TRF knew that Star Auto Group was not satisfied and was frustrated with the services Rosenfield had provided to Star Auto Group.

42.     Prior to TRF and Friedberg emailing the Engagement Letter on October 24, 2019, TRF and Friedberg knew that Star Auto Group was not satisfied and was frustrated with the services Rosenfield had provided to Star Auto Group. Indeed, on or about October 31, 2019, TRF and Friedberg were interviewing other accountants with Star Auto Group in an attempt to retain a new consulting expert to utilize in Star Auto Group's legal action against Voynow.

43.     TRF and TRF Partners should have, but failed to ask Rosenfield if Star Auto Group paid the $5,000 retainer.

44.     TRF and TRF Partners should have, but failed to direct Rosenfield to not perform any work until Star Auto Group signed the Engagement Letter.

45.     Rosenfield is not entitled to any recovery in this action against Star Auto Group for the disputed invoices.

**TRF Breaches The Contract Dated December 1, 2017**

46. Pursuant to the TRF Engagement Letter, Star Auto Group entered into an Agreement with TRF to provide legal services to Star Auto Group in a legal proceeding against Voynow ("Voynow Litigation") commencing on December 1, 2017.

47. Upon information and belief, TRF and Friedberg drafted the TRF Engagement Letter.

48. Friedberg signed the TRF Engagement Letter on behalf of TRF and issued all invoices pursuant to the TRF Engagement Letter to Star Auto Group.

49. On December 18, 2020, Star Auto Group terminated the services of TRF.

50. TRF breached its contract with Star Auto Group dated December 1, 2017, by (i) overbilling and (ii) violating the implied promise of due care and poorly performing under the contract.

**<u>Overbilling</u>**

51. To date, Star Auto Group has paid TRF approximately $339,179.00 in legal fees. Yet, very little progress was made by TRF in the Voynow Litigation and the amount billed is substantially more than the amount of actual work performed.

52. Moreover, the billing rates are incorrect.

53. Under the TRF Engagement Letter, Partners were billed at the rate of $550.00 per hour and associates will be billed at the rate of $250.00-$400.00 per hour.

54. Contrary to the terms of the TRF Engagement Letter, TRF's associate, Stephen Arena ("Arena"), was incorrectly billing at a rate of $450.00 per hour.

55. Prior to filing the complaint in the Voynow Litigation on October 16, 2018, TRF exclusively worked on pre-complaint discovery with opposing counsel.

56.     As of the date of filing, Arena's LinkedIn page states he was an associate at TRF until TRF ceased providing legal services or otherwise conducting business. As of the date of filing, the website for the firm Arena currently works at, Trachtenberg & Arena, LLP, also states that Arena was an associate at TRF.

57.     Friedberg had direct knowledge of the terms of the TRF Engagement Letter and reviewed each invoice TRF issued to Star Auto Group. However, Friedberg still failed to correct Arena's hourly rate to abide by the terms of the TRF Engagement Letter.

58.     Any work Arena performed under the TRF Engagement Letter was under the direct supervision of Friedberg.

59.     After the complaint was filed, TRF, Friedberg, and Arena engaged in discovery-related work, opposed one (1) motion to dismiss, and issued one (1) subpoena which required filing a motion for alternative service. However, the amount of work performed does not justify the hours billed.

60.     For example, one (1) of TRF's invoices, dated September 5, 2019, states that over nine (9) hours were spent reviewing privileged documents, yet TRF, Friedberg, and Arena nonetheless produced privileged documents that should not have been produced.

61.     In another example, one (1) of TRF's invoices dated March 6, 2020 billed 128.34 hours, charging $46,234.00. Almost none of the work from this invoice amounts to any substantial work as most of it consists of calls, correspondence, and attention to documents.

62.     These are only a few of many examples of excessive billing by TRF.

**Poor Performance Under The Contract**

63.     When Star Auto Group terminated TRF, TRF had not performed sufficient work to justify its billings and significant discovery-related work still needed to be done. For example: (i)

TRF did not conduct one (1) deposition; (ii) TRF conducted very few interviews with key witnesses; and (3) TRF failed to review and produce responsive text messages to which they had access.

64.　Around the time Star Auto Group terminated TRF, Star Auto Group spoke with Friedberg on the phone and asked him to provide a brief explanation of the various embezzlement schemes related to the Voynow Litigation. Shockingly, Friedberg was barely able to describe one (1) out of at least a half-dozen embezzlement schemes that formed the basis of the lawsuit that TRF commenced on behalf of Star Auto Group and had been litigating for over (3) years.

65.　As discussed *supra*, TRF, Friedberg, and Arena produced privileged documents that should not have been produced. Before producing these privileged documents, TRF never even asked Star Auto Group if these documents were privileged. Star Auto Group has now incurred additional legal fees engaging in extensive motion practice to attempt to claw back these privileged documents.

66.　Additionally, as described in further detail below, TRF filed a motion to dismiss a complaint filed by Rosenfield against TRF in another action involving the same claims alleged in the instant Complaint. In support of TRF's motion to dismiss, TRF improperly produced a privileged retainer agreement dated March 14, 2019 between Rosenfield and Star Auto Group. This agreement's subject line even states that it is privileged. TRF never contacted Star Auto Group for permission to publicly file this document prior to the filing of its motion to dismiss.

67.　Relying on TRF and Friedberg's expertise, Star Auto Group, in good faith, paid all invoices TRF and Friedberg issued to Star Auto Group less $12,159.30. However once MLLG, received the file from TRF, MLLG discovered the lack of work TRF, Friedberg, and Arena performed and examined how much more work still needs to be performed in the Voynow

Litigation. Star Auto Group also realized they were excessively billed by TRF and Friedberg including being overcharged an amount in excess of $12,159.30 for Arena's work.

**TRF Makes A Material Misrepresentation To A Federal Court**

68.     On November 18, 2020, Rosenfield filed a complaint against TRF in the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida ("the Florida State Court Action") for the same $92,679.68 in damages Rosenfield is seeking in the instant action. Star Auto Group were not parties in the Florida State Court Action.

69.     Rodes represented TRF in the Florida State Court Action.

70.     On December 29, 2020, TRF and Rodes removed the Florida action to the United Stated District Court Middle District of Florida Orlando Division (Case No.: 6:20-cv-02382) ("Florida Federal Action").

71.     On January 29, 2021, Rodes, on behalf of TRF, filed a motion to dismiss the Florida Federal Action. In support of its motion to dismiss, Rodes, on behalf of TRF, argued the complaint failed to state a viable claim under FRCP 12(b)(6) because the Engagement Letter states that only the "Client" is responsible for Rosenfield's expenses.

72.     TRF conceded in its memorandum of law in support of its motion to dismiss that neither Rosenfield nor Star Auto Group emailed a signed copy of the Engagement Letter.

73.     Star Auto Group never signed the Engagement Letter.

74.     To support TRF and TRF Partners' argument that Star Auto Group was somehow bound to the Engagement Letter, TRF and TRF Partners rely on an e-mail from Ken Rosenfield stating that the Engagement Letter is "fine" with Rosenfield and conditions the agreement on Star Auto Group paying a $5,000.00 retainer.

75. In support of TRF's motion to dismiss, TRF and TRF Partners intentionally made a false statement to deceive the court, Rosenfield, and Star Auto Group that Star Auto Group paid the $5,000.00 retainer required under the Engagement Letter.

76. A declaration by Friedberg dated January 29, 2021 was used as an exhibit to TRF's memorandum of law in support of its motion to dismiss. In this declaration, Friedberg states in ¶ 12, under penalty of perjury that "[s]hortly thereafter, Koufakis (or one of his companies) paid the $5,000 retainer".

77. ¶ 12 of Friedberg's January 29, 2021 declaration is false because Star Auto Group never paid the $5,000.00 retainer.

78. Prior to filing TRF's memorandum of law in support of TRF's motion to dismiss, along with the accompanying exhibits, TRF and TRF Partners never contacted Star Auto Group or MLLG to find out if Star Auto Group actually paid the $5,000.00 retainer.

79. After Star Auto Group and MLLG reviewed TRF's memorandum of law in support of TRF's motion to dismiss, along with the accompanying exhibits, MLLG immediately contacted Friedberg via telephone on February 16, 2021 and informed Friedberg that Star Auto Group never paid the $5,000.00 retainer. In response, Friedberg stated "I don't know where I got that from".

80. MLLG then directed Friedberg, in a February 19, 2021 letter, to "immediately and comprehensively correct those material factual errors inasmuch as these completely false statements could potentially create an artificial liability to [Star Auto Group] based on purported false facts."

81. On February 24, 2021, Rodes responded to MLLG's February 19, 2021 letter stating that there are documents which "supported the inference that [Star Auto Group] did, in fact, pay [the] retainer shortly after Rosenfield's email".

82.     On February 25, 2021, MLLG responded to Rodes' February 24, 2021 letter and reiterated that Star Auto Group never paid the retainer.

83.     However, TRF and TRF Partners refused to make any corrections even though Friedberg's declaration contains false statements submitted under penalties of perjury.

84.     TRF and TRF Partners knew that if they did make these corrections, they would not be able to prevail on TRF's motion to dismiss.

85.     Upon information and belief, Rosenfield relied on TRF's motion papers and accompanying exhibits, which included Friedberg's declaration, when it filed a notice of voluntary dismissal on February 19, 2021, without prejudice, and stated that it would refile its action in the Southern District of New York. Ultimately, this resulted in Rosenfield filing this instant Complaint against TRF and Star Auto Group. But for TRF's motion papers containing Friedberg's false statements in his January 29, 2021 declaration, the instant action would not be commenced.

<strong><u>FIRST CROSS-CLAIM AGAINST TRF AND<br>FIRST THIRD-PARTY CLAIM AGAINST TRF PARTNERS</u></strong><br><strong>(Contribution and/or Indemnification)</strong>

86.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

87.     TRF and TRF Partners retained and incurred expenses from Rosenfield without prior approval by Star Auto Group.

88.     In the event that Rosenfield succeeds in its claims against Star Auto Group wherein it asserts that Star Auto Group is bound to the Engagement Letter, Star Auto Group should be reimbursed by TRF and TRF Partners for any such amounts owed.

89.     By reason of the foregoing, if and to the extent Rosenfield succeeds in any action against Star Auto Group for any portion of fees or charges alleged in the Complaint or otherwise, TRF and TRF Partners must reimburse Star Auto Group for any and all such amounts.

### SECOND CROSS-CLAIM AGAINST TRF AND
### SECOND THIRD-PARTY CLAIM AGAINST FRIEDBERG
**(Breach of Contract Dated December 1, 2017)**

90.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

91.     TRF and Friedberg are liable to Star Auto Group for breach of contract for (i) overbilling and (ii) violating the implied promise of due care for poor performance under its contract with Star Auto Group. Any billing by Arena billed at a rate greater than $400.00 per hour must be reduced to at least $400.00 per hour.

92.     Accordingly, TRF and Friedberg breached its agreement with Star Auto Group and Star Auto Group is entitled to damages and every available remedy at law.

### THIRD CROSS-CLAIM AGAINST TRF AND
### THIRD THIRD-PARTY CLAIM AGAINST TRF PARTNERS
**(Fraudulent Misrepresentation)**

93.     Star Auto Group repeats and realleges each and every allegation contained in the preceding Paragraphs, as if fully set forth herein.

94.     As its attorney, TRF and TRF Partners owed a fiduciary duty to Star Auto Group.

95.     TRF and TRF Partners made material misrepresentations of fact to Star Auto Group regarding its work and bills which were made intentionally in order to defraud or mislead Star Auto Group.

96.     Star Auto Group reasonably relied on the misrepresentations and suffered damages as a result of its reliance on TRF and TRF Partners' misrepresentations.

97.     Star Auto Group was damaged by TRF and TRF Partners' conduct.

## PRAYER FOR RELIEF

**WHEREFORE,** Star Auto Group demands the following:

a.  Judgment on all cross-claims against TRF in an amount to be established at trial plus pre and post-judgment interest, costs, attorney's fees, and punitive damages for Star Auto Group's third cross-claim;

b.  Judgment on all third-party claims against Friedberg and Rodes in an amount to be established at trial plus pre and post-judgment interest, costs, attorney's fees, and punitive damages for Star Auto Group's third third-party claim; and

c.  Together with such other and further relief as the Court deems just and proper.

## STAR AUTO GROUP DEMANDS TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Star Auto Group demands a trial by jury on all questions of fact raised in this case.

Dated:  Lake Success, New York
        October 8, 2021

                                        **MILMAN LABUDA LAW GROUP PLLC**


                                        By: /s/_____
                                        Joseph M. Labuda, Esq.
                                        Jamie S. Felsen, Esq.
                                        Emanuel Kataev, Esq.
                                        3000 Marcus Avenue, Suite 3W8
                                        Lake Success, NY 11042-1073
                                        (516) 328-8899 (office)
                                        (516) 328-0082 (facsimile)
                                        joe@mllaborlaw.com
                                        jamie@mllaborlaw.com
                                        emanuel@mllaborlaw.com

*Attorneys for Defendants-Third-Party Plaintiffs, Star Auto Sales of Bayside, Inc. d/b/a Star Toyota of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto Sales of Queens Village LLC d/b/a Star Mitsubishi*