UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ROSENFIELD & COMPANY, PLLC,

                           Plaintiff,

          -against-

Case No.: 1:21-cv-3858 (JLR) (KHP)

TRACHTENBERG, RODES & FRIEDBERG LLP,
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

                           Defendants.
-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES OF
QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

                  Defendants-Counterclaimants,

          -against-

ROSENFIELD & COMPANY, PLLC,

               Plaintiff-Counterclaim-Defendant.
-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR
TOYOTA OF BAYSIDE), STAR AUTO SALES OF
QUEENS, LLC (d/b/a STAR SUBARU), STAR
HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC (d/b/a STAR NISSAN), METRO

CHRYSLER PLYMOUTH INC. (d/b/a STAR CHRYSLER JEEP DODGE), STAR AUTO SALES OF QUEENS COUNTY LLC (d/b/a STAR FIAT), and STAR AUTO SALES OF QUEENS VILLAGE LLC (d/b/a STAR MITSUBISHI),

                    Defendants-Cross-claimants,

                -against-

TRACHTENBERG, RODES & FRIEDBERG LLP,

              Defendant-Cross-claim-Defendants.

-----------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR TOYOTA OF BAYSIDE), STAR AUTO SALES OF QUEENS, LLC (d/b/a STAR SUBARU), STAR HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR NISSAN, INC (d/b/a STAR NISSAN), METRO CHRYSLER PLYMOUTH INC. (d/b/a STAR CHRYSLER JEEP DODGE), STAR AUTO SALES OF QUEENS COUNTY LLC (d/b/a STAR FIAT), and STAR AUTO SALES OF QUEENS VILLAGE LLC (d/b/a STAR MITSUBISHI),

                Third-Party Plaintiffs,

              -against-

BARRY J. FRIEDBERG and LEONARD A. RODES,

                Third-Party Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANTS-THIRD-PARTY PLAINTIFFS IN OPPOSITION TO THE MOTION TO DISMISS BY TRACHTENBERG, RODES & FRIEDBERG LLP, BARRY J. FRIEDBERG, AND LEONARD A. RODES**

**MILMAN LABUDA LAW GROUP PLLC**

Jamie S. Felsen, Esq.
Michael C. Mule, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)

ii

jamiefelsen@mllaborlaw.com
michaelmule@mllaborlaw.com

*Attorneys for Star Auto Sales of Bayside,
Inc. d/b/a Star Toyota of Bayside, Star Auto
Sales of Queens, LLC d/b/a Star Subaru,
Star Hyundai LLC d/b/a Star Hyundai, Star
Nissan, Inc d/b/a Star Nissan, Metro
Chrysler Plymouth Inc. d/b/a Star Chrysler
Jeep Dodge, Star Auto Sales of Queens
County LLC d/b/a Star Fiat, and Star Auto
Sales of Queens Village LLC d/b/a Star
Mitsubishi*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTS ................................................................................................................ 4

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 6

   POINT I ............................................................................................................ 6

     STAR HAS SUFFICENTLY STATED CLAIMS FOR CONTRIBUTION AND
     INDEMNIFICATION.................................................................................... 6

   POINT II ......................................................................................................... 12

     STAR HAS SUFFICENTLY STATED A CLAIM FOR BREACH OF CONTRACT
     UNDER THE 2017 TRF RETAINER AGREEMENT ....................................... 12

   POINT III ........................................................................................................ 13

     STAR HAS SUFFICENTLY STATED A CLAIM FOR FRAUDULENT
     MISREPRESENTATION.............................................................................. 13

   POINT IV........................................................................................................ 15

     STAR HAS SUFFICENTLY STATED A CLAIM FOR FORFEITURE OF LEGAL FEES
     BASED ON ATTORNEYS' DISCHARGE FOR CAUSE.................................. 15

CONCLUSION ................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**

Ajax Hardware Mfg. Corp. v. Indus. Plants Corp., 569 F.2d 181, 185 (2d Cir 1977) ................... 7

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ............................................. 6

Baugher v. Cullen & Dykman, LLP, 173 A.D.3d 959 (2d Dept 2019) ........................................ 15

Betz v. Blatt, 116 A.D.3d 813 (2d Dept 2014) ........................................................................... 15

Bivona v. Danna & Assoc., P.C., 123 A.D.3d 956 (2d Dept 2014) ................................................ 7

BL Rest. Operations, LLC v. 701 Am., Inc., 2012 U.S. Dist. LEXIS 24364 (S.D.N.Y. Feb. 14,
    2012) ...................................................................................................................................... 14

Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) .................................................. 6

Chisholm-Ryder Co. v. Sommer & Sommer, 70 A.D.2d 429 (4th Dept 1979) ............................... 9

Cigna Co. v. A.L. Bazzini Co., 1990 U.S. Dist. LEXIS 13679 (S.D.N.Y. Oct. 15, 1990) ............. 8

City of NY v. Black & Veatch, 1997 U.S. Dist. LEXIS 15510 (S.D.N.Y. Oct. 3, 1997) ............... 8

Hampshire Equity Partners II, L.P. v. Teradyne, Inc., 2005 U.S. Dist. LEXIS 5261 (S.D.N.Y.
    Mar. 30, 2005) ....................................................................................................................... 14

Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398 (S.D.N.Y. 2003) ........................... 12

Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) ............................. 9, 11

McMahon v. Eke-Nweke, 503 F. Supp. 2d 598, 604 (E.D.N.Y. 2007) ....................................... 10

Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) ........................................ 6

O'Connor v. Blodnick, Abramowitz and Blodnick, 295 A.D.2d 586 (2d Dept 2002) ................. 12

Pelgrift v. 355 W. 41st Tavern, Inc., 2018 U.S. Dist. LEXIS 169649 (S.D.N.Y. Sep. 30, 2018) 11

Perkins Eastman Architects, P.C. v. Thor Engrs., P.A., 769 F. Supp. 2d 322 (S.D.N.Y. 2011) .... 7

Piccarreto v. Mura, 41 Misc. 3d 295 (Sup. Ct., Monroe County 2013) ...................................... 15

Salazar v. Sacco & Fillas, LLP, 114 AD3d 745 (2d Dept 2014) .................................................. 11

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 242 (2d Cir. 2002)................................ 10

Styles Brook Homeowners' Assn. v. Blasi, 165 A.D.3d 100 (2d Dept 2018) ............................ 12

William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 602 (2d Cir. 1989) ........................................ 8

**Rules**

Fed. R. Civ. Proc. Rule 12(b)(6) ................................................................................................. 11

Fed. R. Civ. Proc. Rule 8(a)(3) .................................................................................................... 8

Rule 1.9 of the Rules of Professional Conduct ........................................................................... 22

Rule 3.3 of the Rules of Professional Conduct ........................................................................... 21

Rules 1.5 of the Rules of Professional Conduct .......................................................................... 21

## PRELIMINARY STATEMENT

The cross-claims and third-party claims of Defendants-Third-Party Plaintiffs, Star Auto Sales of Bayside, Inc. d/b/a Star Toyota of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto Sales of Queens Village LLC d/b/a Star Mitsubishi (collectively hereinafter "Star") against Defendant, Trachtenberg, Rodes & Friedberg LLP ("TRF") and Third-Party Defendants, Barry J. Friedberg ("Friedberg") and Leonard A, Rodes ("Rodes") (collectively hereinafter the "TRF Partners") should proceed and TRF's and TRF Partners' (collectively "TRF Defendants") motion to dismiss should be denied.

Star has sufficiently asserted its cross-claim and third-party claim against TRF Defendants for contribution and/or indemnification.  Contrary to TRF Defendants' argument, this claim does not arise solely from breach of contract because if TRF authorized Rosenfield & Company, PLLC ("Rosenfield") to perform work for Star which Star had not previously authorized, TRF Defendants were negligent as the December 1, 2017 engagement letter between Star and TRF ("2017 TRF Retainer Agreement") did not authorize them to make such a commitment.

TRF Defendants' argument that Star is solely liable for Rosenfield's unpaid invoices is belied by the fact that TRF Defendants, like Star, are being sued by Rosenfield related to the alleged unpaid invoices stemming from the purported October 24, 2019 Engagement Letter with Rosenfield ("2019 Rosenfield Engagement Letter").

Any finding that Star is liable to Rosenfield would be based on Rosenfield's understanding that TRF had authority to retain Rosenfield on Star's behalf.  However, that does not mean that TRF Defendants are not fully at fault for all damages related thereto.  Indeed, Star seeks

contribution and indemnification if the Court ultimately finds that Star is at fault due to TRF Defendants' unauthorized actions.

At this early stage (pre-answer motion to dismiss), TRF Defendants cannot rely on the retainer agreement, correspondence, invoices, and proofs of payment in an attempt to demonstrate that Star was aware of the services being provided by Rosenfield in connection with the Voynow Action for nearly three years prior to the purported 2019 Rosenfield Engagement Letter. Any such evidence falls outside the pleadings. In any event, Star alleges that the work Rosenfield performed for Star prior to the 2019 Rosenfield Engagement Letter was different from and unrelated to the work thereunder.

Rodes' arguments fare no better. Star is not required to plead a fiduciary relationship to establish an indemnification or contribution claim. Moreover, contrary to his argument, Rodes' involvement is sufficiently alleged as Star alleges, *inter alia*, that Rodes performed work on Star's behalf on several occasions and alleges the details of his work for Star.

Star has sufficiently asserted its cross-claim against TRF and third-party claim against Friedberg for breach of contract concerning the 2017 TRF Retainer Agreement. TRF's and Friedberg's waiver argument must be rejected because Star alleges that the invoices provided by TRF provided little indication as to what work was done and for what purpose, Star relied on TRF's and Friedberg's expertise, and it was only after Star retained new counsel who analyzed the file that Star was first made aware of the lack of work that TRF and Friedberg actually performed and that Star had been excessively and fraudulently overbilled. Even where, as here, fees were already paid to an attorney, in an attorney-client relationship, overbilling and padding of costs can constitute a breach of contract.

Star has sufficiently asserted its cross-claim against TRF and third-party claim against Friedberg for fraudulent misrepresentation. Star's fraudulent misrepresentation claim is not duplicative of its claim for breach of contract against TRF and Friedberg as Star's fraudulent misrepresentation claim relates to misrepresentations made to Star by TRF and Friedberg concerning litigation work it purportedly performed on Star's behalf in their capacity as fiduciaries. Moreover, even if Star's breach of contract claim were dismissed, and it should not be, its fraudulent misrepresentation claim could still survive. Therefore, the claims are pled in the alternative, which Fed. R. Civ. Proc. Rule 8(a)(3) expressly permits.

Contrary to TRF's and Friedberg's argument, Star expressly alleges "TRF and Friedberg knowingly made misrepresentations of fact to Star Auto Group regarding its work and bills which were made intentionally in order to defraud or mislead Star Auto Group as set forth in ¶¶ 29, 50-101." Star provides detailed factual allegations from which it may be plausibly inferred that TRF and Friedberg knew its representations were false.

Star has also sufficiently asserted its cross-claim and third-party claim against TRF Defendants for disgorgement of legal fees which is, contrary to TRF Defendants' argument, a cognizable cause of action where, as here, an attorney is alleged to have engaged in ethical violations.

Star did not acquiesce in TRF Defendants' unethical billing practices as Star was unaware of the work TRF Defendants did not perform for which they billed Star until after Star retained new counsel who analyzed the file. Even assuming *arguendo* that Star was aware and allowed itself to be fraudulently overbilled (which is illogical), that does not relieve TRF Defendants of their ethical obligations and the damages caused thereby.

With regard to TRF Defendants' argument that Star fails to allege, with any specificity, whether TRF Defendants entered into a representation of an adverse client, TRF Defendants disregard Star's specific allegations.  Indeed, Star alleges that TRF represented itself in the Florida action commenced against TRF wherein TRF took a position adverse to, and made a false statement to the Court concerning its former client, Star. Particularly, TRF stated in a declaration signed by Friedberg that Star paid the $5,000 retainer agreement required under the 2019 Rosenfield Engagement Letter.  However, as Star also alleges, TRF Defendants knew that this statement was false, and were given the opportunity to correct this false statement, but failed to do so because such correction would imperil the success of their motion to dismiss.  And lastly, Star alleges that Rosenfield relied on TRF Defendants' false statement and thereafter commenced the instant action, naming Star as a defendant, to Star's substantial prejudice.

Accordingly, dismissal of Star's cross-claims and third-party claims are not warranted, and TRF Defendants' motion must be denied in its entirety.

## FACTS

After this action was commenced against Star and TRF by Rosenfield, Star asserted cross-claims and third-party claims against TRF Defendants. (See Declaration of Jamie S. Felsen, ¶ 3). In accordance with Judge Marrero's individual rules, on November 17, 2021, TRF Defendants notified Star of purported deficiencies in Star's cross-claims and third-party claims. Id at ¶ 4. On December 15, 2021, Star provided TRF Defendants with proposed amendments to its pleadings in accordance with Judge Marrero's individual rules. Id at ¶ 5. TRF Defendants stated they were not satisfied with the sufficiency of the proposed amendments. (ECF Doc. No. 88). On June 14, 2022, Judge Marrero gave TRF Defendants permission to file their motion to dismiss. (ECF Doc. No. 92). On July 18, 2022, TRF Defendants filed their motion to dismiss without taking into account

any of Star's proposed amendments. (ECF Doc. No. 94). On August 4, 2022, Star amended its cross-claims and third-party claims to allege claims for (1) contribution and/or indemnification against TRF Defendants; (2) breach of contract against TRF and Friedberg concerning the 2017 TRF Retainer Agreement for overbilling and violating the implied promise of due care for poor performance under the contract; (3) fraudulent misrepresentation against TRF and Friedberg; and (4) disgorgement of legal fees against TRF Defendants. (ECF Doc. No. 102). On August 15, 2022, Judge Marrero ordered that TRF Defendants refile their motion to dismiss as Star's amended cross-claims and third-party claims rendered the motion to dismiss filed on July 18, 2022 as moot. (ECF Doc. No. 105). On October 14, 2022, TRF Defendants filed this motion.

Star's contribution/indemnification claim alleges that TRF Defendants directed Rosenfield to perform work for Star without Star's approval, and asserts that in the event Rosenfield succeeds in its claims against Star related to the engagement letter, then Star should be reimbursed by TRF Defendants for any such amounts under common law indemnification and/or contribution concerning TRF and under Partnership Law § 26(c) concerning TRF Partners.

Star's breach of contract claim alleges that TRF and Friedberg overbilled and charged rates higher than agreed to in their retainer agreement and that Star did not become aware of such conduct until after it retained new counsel.

Star's fraudulent misrepresentation claim alleges that TRF and Friedberg, who owed fiduciary duties to Star, knowingly made material misrepresentations to Star regarding the work they performed for Star in order to defraud or mislead Star.

Star's disgorgement of legal fees claim alleges that due to TRF Defendants' disloyalty and violations of the New York Rules of Professional Conduct, they forfeited their right to receive any compensation from Star and must disgorge all compensation Star paid to them.

## LEGAL STANDARD

During the pleadings stage in litigation, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." <u>Nechis v. Oxford Health Plans, Inc.,</u> 421 F.3d 96, 100 (2d Cir. 2005).  A motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) challenges the legal sufficiency of a complaint.  Fed. R. Civ. Proc. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) <u>quoting</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The Court must "draw all reasonable inferences in favor of the plaintiff."  <u>Fernandez v. Chertoff</u>, 471 F.3d 45 (2d Cir 2006).

The court, in evaluating the motion to dismiss, may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." <u>Brass v. Am. Film Tech., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

## ARGUMENT

### POINT I

### STAR HAS SUFFICENTLY STATED CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION

Star's first cross-claim against TRF and first third-party claim against TRF Partners alleges that TRF Defendants directed Rosenfield to perform work for Star without Star's approval, and in the event Rosenfield succeeds in its claims against Star related to the 2019 Rosenfield Engagement Letter, then Star should be reimbursed by TRF Defendants for any such amounts under common

law indemnification and/or contribution concerning TRF and under Partnership Law §26(c) concerning TRF Partners.

TRF Defendants also argue that Star cannot state a cause of action for indemnification against TRF Defendants because such a claim is barred where the party seeking indemnification is at fault.  However, a finding that Star is liable to Rosenfield would be merely based on Rosenfield's reasonable understanding that TRF had authority to retain Rosenfield on behalf of Star – although clearly, TRF had no such authority. Therefore, Star seeks indemnification if the Court ultimately finds that Star is at fault **due to TRF Defendants' actions**. (See ECF Doc. No. 102 ¶¶ 29-42; 104).  "Common-law indemnification is warranted where a defendant's role in causing the plaintiff's injury is solely passive, and thus its liability is purely vicarious." Bivona v. Danna & Assoc., P.C., 123 A.D.3d 956 (2d Dept 2014).

In the alternative, TRF Defendants argue, purportedly based on Perkins Eastman Architects, P.C. v. Thor Engrs., P.A., 769 F. Supp. 2d 322 (S.D.N.Y. 2011), that Star's contribution claim must be dismissed because it arises solely from breach of contract.  However, Perkins Eastman Architects does not support TRF Defendants' argument because in Perkins Eastman Architects, as in this case, the allegations sounded in both contract and tort as contribution and indemnification were asserted with regard to liability allegedly caused by the developer's and owner's acts, omissions and negligence.  Id. at 327.  Here, Star alleges that TRF Defendants engaged in negligent and wrongful acts to the extent TRF authorized Rosenfield to perform work for Star because the 2017 TRF Retainer Agreement expressly required Star's prior written authority – which admittedly was not given.  (See ECF Doc. No. 102 ¶¶ 31-42, 105).  Thus, where, as here, there are allegations sounding in tort, a contribution claim may proceed.  Ajax Hardware Mfg. Corp. v. Indus. Plants Corp., 569 F.2d 181, 185 (2d Cir 1977) ("[n]egligent performance of

a contract may give rise to a claim sounding in tort as well as one for breach of contract); Cigna Co. v. A.L. Bazzini Co., 1990 U.S. Dist. LEXIS 13679 (S.D.N.Y. Oct. 15, 1990) (although the relationship originated in contract, allegation that plaintiff was negligent in its manufacture of cans used to package nuts, and was further negligent in failing to advise defendant of the proper manner of storage of the nuts once in the cans, sounds in tort, and therefore, contribution claim could proceed); William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 602 (2d Cir. 1989) ("It is well settled under New York law that negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract . . . . Because defendants held themselves out as experts . . . they were required to act with due care and thus their liability arises out of a duty imposed by law"); City of NY v. Black & Veatch, 1997 U.S. Dist. LEXIS 15510 (S.D.N.Y. Oct. 3, 1997) (denying motion for summary judgment with regard to contribution claim that alleged tortious conduct related to breach of contract).

TRF Defendants also argue that Star cannot state a contribution claim because Star does not allege that TRF Defendants had a part in causing or augmenting the injury alleged by Rosenfield. This is false. Indeed, Star pleads that the 2017 TRF Retainer Agreement explicitly prohibited TRF from incurring any material expense without Star's prior approval. (See ECF Doc. No. 102 ¶¶ 27-44). Star also alleges that TRF Defendants never received Star's prior approval for Rosenfield to perform any work related to the invoices that are the subject of Rosenfield's complaint against Star. Id. Thus, any work Rosenfield performed was done solely because TRF Defendants not only breached their contractual obligations to Star, but also because they were negligent in authorizing Rosenfield to perform work when they had no authority to do so.

In a similar vein, TRF Defendants argue that Star is solely liable for Rosenfield's unpaid invoices. However, TRF Defendants fail to inform the Court that they, too, are being sued by

Rosenfield related to the alleged unpaid invoices stemming from the purported 2019 Rosenfield Engagement Letter.[1]

TRF Defendants also assert a waiver argument, in reliance on <u>Chisholm-Ryder Co. v. Sommer & Sommer</u>, 70 A.D.2d 429 (4th Dept 1979). In particular, they claim that Star fails to state a claim for contribution and/or indemnification against TRF Defendants because a retainer agreement, correspondence, invoices, and proofs of payment demonstrate that Star was aware of the services being provided by Rosenfield in connection with the Voynow Action for nearly three years prior to the execution of the 2019 Rosenfield Engagement Letter and thus acquiesced by paying for same. TRF Defendants cannot rely on such documents on a motion to dismiss because they are, in essence, seeking to have the Court make a fact determination. <u>See</u> <u>Leonard F. v. Israel Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999). Additionally, as noted in <u>Chisholm-Ryder</u>, where, as here, fraud or other equitable considerations are present, there is no waiver. 70 A.D.2d at 458.

Moreover, TRF Defendants' argument ignores Star's allegations that the work Rosenfield performed for Star prior to the purported 2019 Rosenfield Engagement Letter was unrelated to the work under the purported 2019 Rosenfield Engagement Letter. (<u>See</u> ECF Doc. No. 102 ¶¶ 43-44). Therefore, TRF Defendants' waiver argument makes no sense and must be rejected. In addition, as alleged by Star, leading up to the purported 2019 Rosenfield Engagement Letter, TRF Defendants actually stopped utilizing Rosenfield on behalf of Star (for the unrelated work), and TRF Defendants were well aware that Star was looking to replace Rosenfield altogether. TRF Defendants even interviewed new forensic experts on Star's behalf in October 2019. (<u>See</u> ECF

---

[1] The idea of making a motion to dismiss on this ground is the height of hypocrisy as TRF has asserted the same cross-claim against Star. (<u>See</u> ECF Doc. No. 29 at pp.12-13).

Doc. No. 102 ¶ 41).   Despite this, TRF and Friedberg sent the purported 2019 Rosenfield Engagement Letter to Rosenfield **and** Star for signature – and it should have been no surprise to TRF and Friedberg that Star did not sign it. (See ECF Doc. No. 102 ¶¶ 30, 41). The letter expressly stated: "[Rosenfield] and [Star] acknowledge their respective agreement with the terms stated herein **as evidenced by their signatures below**".  (See ECF Doc. No. 115-4) (emphasis added). Rosenfield signed it but indicated via email they needed to receive a $5,000.00 payment from Star before commencing work.  (See ECF Doc. No. 102 ¶ 32).  Critically, Star never signed the 2019 Rosenfield Engagement Letter, nor did it pay the $5,000 because, as TRF Defendants were aware, Star no longer wanted to use Rosenfield.   (See ECF Doc. No. 102 ¶¶ 31, 41).

Rodes argues that Star insufficiently alleges the existence of a fiduciary relationship between Star and Rodes and that Star fails to allege any involvement by Rodes related to Star. However, for an indemnification claim, no such allegation regarding a fiduciary relationship is required.  See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 242 (2d Cir. 2002) ("No fiduciary duty need be alleged in order to state a claim for indemnification under state law").  But, in any event, Star has alleged that Rodes owed a fiduciary duty to Star because he represented Star. (See ECF Doc. No. 102 ¶ 112); McMahon v. Eke-Nweke, 503 F. Supp. 2d 598, 604 (E.D.N.Y. 2007).

Moreover, Rodes' involvement is sufficiently alleged as Star alleges, *inter alia*, that, based on TRF's own billing records, Rodes performed work on Star's behalf, on December 1, 2017, February 5, 2018, February 6, 2018, March 1, 2018, and August 30, 2018, which work purportedly included drafting the complaint and a tolling agreement related to Star's action against Voynow. (See ECF Doc. No. 102 ¶¶ 83-86, 95).

10

Rodes submits a declaration from his attorney purportedly containing "accurate copies of invoices sent from TRF to Star regarding services rendered pursuant to the Retainer Agreement." (ECF Doc. No. 115, 115-5).  These documents are not submitted by Rodes, but are submitted by Rodes' counsel who has no personal knowledge about their contents.  Therefore, they may not be considered.  See Pelgrift v. 355 W. 41st Tavern, Inc., 2018 U.S. Dist. LEXIS 169649 (S.D.N.Y. Sep. 30, 2018).  Moreover, Star's allegations must be assumed to be true and Rodes is precluded from submitting documents in an attempt to dispute Star's allegations.  See Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999).  In any event, astonishingly, Rodes has not submitted all of the invoices.  Indeed, he has omitted many invoices, which include but are not limited to the invoices that reflect the December 1, 2017, February 5, 2018, February 6, 2018, March 1, 2018, and August 30, 2018 work performed by Rodes. (See Declaration of Michael Koufakis, ¶ 3).

Also, contrary to TRF Defendants' argument, contribution and/or indemnification claims are viable against Friedberg and Rodes individually. TRF Defendants tacitly concede this point as they do not address Star's allegations concerning Partnership Law § 26(c). Under Partnership Law § 26(c), partners are personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by them, or by any person under their direct supervision and control, while rendering professional services in their capacity as a partner. N.Y. Partnership Law § 26(c); Salazar v. Sacco & Fillas, LLP, 114 AD3d 745 (2d Dept 2014).  At this stage, Star only needs to "set forth sufficient information to apprise [TRF Defendants] of the alleged wrongs." Salazar, 114 AD3d at 747.  Star has sufficiently alleged that Rodes (and Friedberg, who TRF Defendants do not assert this argument for) engaged in misconduct.

Accordingly, Star's contribution and indemnification claim should proceed.

11

**POINT II**

**STAR HAS SUFFICENTLY STATED A CLAIM FOR BREACH OF CONTRACT
UNDER THE 2017 TRF RETAINER AGREEMENT**

TRF and Friedberg argue that Star fails to state a breach of contract claim against them because Star paid TRF's invoices without objection for nearly three years.  However, as Star alleges, the invoices provided by TRF provided little indication as to what work was done and for what purpose.  (See ECF Doc. No. 102 ¶¶ 55, 72).  Star also alleges that it relied on TRF's and Friedberg's expertise and it was only after Star retained new counsel who analyzed the file that Star was first made aware of the lack of work that TRF and Friedberg actually performed and that Star had been excessively and fraudulently overbilled.  (See ECF Doc. No. 102 ¶¶ 80-81).

In the attorney-client context related to billing, overbilling and padding of costs can constitute a breach of contract and can give rise to a cause of action in favor of a client and against an attorney even if the fees were previously paid.  O'Connor v. Blodnick, Abramowitz and Blodnick, 295 A.D.2d 586 (2d Dept 2002). As the court held in O'Connor, as a matter of public policy, the former attorney has the burden of establishing that his compensation was fair and reasonable and **"the fact that the fees in question were already paid to the defendants [does] not alter the fact that the defendants bore the ultimate burden of proof as to the reasonableness of their fees."** Id. at 587 (emphasis added).

TRF's and Friedberg's reliance on Styles Brook Homeowners' Assn. v. Blasi, 165 A.D.3d 100 (2d Dept 2018), and several other cases, is unavailing. Styles Brook Homeowners' Assn. is distinguishable because it did not concern the payment of legal fees (and it was a motion for summary judgment).

TRF and Friedberg also rely on Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398 (S.D.N.Y. 2003) wherein a law firm was granted summary judgment on an account stated

12

claim against clients.  However, in <u>Rossi</u>, there was no allegation, as in this case, that the law firm's invoices provided little indication as to what work was done and for what purpose and that the client did not become aware of the overbilling until after it retained new counsel who analyzed the file.

Here, Star has sufficiently alleged that TRF and Friedberg overbilled and charged rates higher than agreed to in the Retainer Agreement which Star did not become aware of until after it retained new counsel.

Star asserts intricate details covering seven (7) pages of its pleading related to TRF's and Friedberg's overbilling.  (<u>See</u> ECF Doc. No. 102 ¶¶ 53-81).  These allegations are sufficient and TRF and Friedberg bear the burden to prove the reasonableness of their fees.  Star's payment of invoices does not preclude it from proceeding with this claim.  Denial of the motion is warranted.

**POINT III**

**STAR HAS SUFFICENTLY STATED A CLAIM FOR FRAUDULENT MISREPRESENTATION**

TRF and Friedberg argue that the fraudulent misrepresentation claim is duplicative of Star's claim for breach of contract against TRF and Friedberg related to overbilling.  It is not. Star's fraud claim relates to misrepresentations made to Star by TRF and Friedberg concerning litigation work they purportedly performed on Star's behalf in their capacity as fiduciaries.

In the unlikely event that Star's breach of contract claim is dismissed due to Star's purported failure to reject and not pay invoices, its fraudulent misrepresentation claim would survive.  Therefore, the claims are pled in the alternative which Rule 8(a)(3) expressly permits. "Dismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide "latitude" in framing their right to recover."   <u>BL Rest.</u>

Operations, LLC v. 701 Am., Inc., 2012 U.S. Dist. LEXIS 24364 (S.D.N.Y. Feb. 14, 2012) quoting

Seiden Assoc. v ANC Holdings, Inc., 754 F. Supp. 37 (S.D.N.Y. 1991).

TRF and Friedberg also argue that Star has not pled that TRF and Friedberg knowingly

overbilled. However, Star expressly alleges "TRF and Friedberg knowingly made

misrepresentations of fact to Star Auto Group regarding its work and bills which were made

intentionally in order to defraud or mislead Star Auto Group as set forth in ¶¶ 29, 50-101." (See

ECF Doc. No. 102 ¶ 113). Moreover, Star provides detailed factual allegations from which it may

be plausibly inferred that TRF and Friedberg knew their representations were false.

Assuming the truth of the numerous allegations regarding TRF's and Friedberg's

fraudulent conduct related to billing spanning seven (7) pages of Star's pleadings, as the Court

must do, there can be no conclusion other than that TRF and Friedberg were aware that they were

overbilling. (See ECF Doc. No. 102 ¶¶ 50-79). Indeed, Star alleges that TRF and Friedberg billed

720 hours totaling $350,000 for work they did not actually perform and when TRF was terminated,

Friedberg could not even articulate a single embezzlement scheme despite numerous

embezzlement schemes forming the entire basis for the underlying litigation. (See ECF Doc. No.

102 ¶ 75). From this, the clear inference must be that TRF and Friedberg knew that their billing

could not have been accurate, and in fact, was misrepresented.

In Hampshire Equity Partners II, L.P. v. Teradyne, Inc., 2005 U.S. Dist. LEXIS 5261

(S.D.N.Y. Mar. 30, 2005), upon which TRF and Friedberg rely, the Court explained that scienter

may be adequately pled by alleging motive and opportunity to commit fraud or specific facts giving

rise to strong circumstantial evidence of conscious misbehavior or recklessness.[2] Here, as

---

[2] Star does not assert a fraudulent misrepresentation claim related to Rodes' misrepresentations in the Florida action in its First Amended Cross-Claims and First Amended Third-Party Complaint. Star initially asserted this claim, but after it received TRF Defendants' pre-motion conference

discussed *supra*, Star has pled specific facts giving rise to strong circumstantial evidence of conscious misbehavior or recklessness.  Star's allegations support the conclusion that TRF and Friedberg knew they were overbilling.

Accordingly, Star's fraudulent misrepresentation claim is sufficiently pled and the motion must be denied.

## POINT IV

## STAR HAS SUFFICENTLY STATED A CLAIM FOR FORFEITURE OF LEGAL FEES BASED ON ATTORNEYS' DISCHARGE FOR CAUSE

Contrary to TRF Defendants' argument that disgorgement of fees is a remedy and not an independent cause of action, "[a] cause of action for forfeiture of legal fees based on an attorney's discharge for cause due to ethical violations may be maintained independent of a cause of action alleging legal malpractice or breach of fiduciary duty, and does not require proof or allegations of damages."[3]  Baugher v. Cullen & Dykman, LLP, 173 A.D.3d 959 (2d Dept 2019) (complaint sufficiently stated a claim for forfeiture of legal fees where it alleged that the defendant violated rule 1.7 of the Rules of Professional Conduct due to its dual representation for which it was

---

request, it did not include this claim in its First Amended Cross-Claims and First Amended Third-Party Complaint.

[3] TRF's reliance on Betz v. Blatt, 116 A.D.3d 813 (2d Dept 2014) for the proposition that disgorgement is a remedy and not a separate cause of action does not stand for this proposition.  In Betz, the plaintiff asserted a malpractice claim wherein she sought disgorgement of fees as a remedy.  The court merely concluded that because she sought disgorgement as a remedy in her malpractice claim, the disgorgement claim was duplicative, warranting dismissal.  Here, Star does not assert a claim for malpractice and does not assert any additional claim for disgorgement of fees.

Piccarreto v. Mura, 41 Misc. 3d 295 (Sup. Ct., Monroe County 2013) is distinguishable from the instant case because the plaintiff did not assert any violation of the Rules of Professional Conduct by the attorney, nor did it involve any alleged wrongdoing by the attorney.  Piccarreto merely involved a charging lien asserted by an attorney who represented a wife in divorce proceedings.

disqualified); see also Quinn v. Walsh, 18 A.D.3d 638 (2d Dept 2005) ("an attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered").  Even "[m]isconduct that occurs before an attorney's discharge but is not discovered until after the discharge may serve as a basis for fee forfeiture." Doviak v. Finkelstein & Partners, LLP, 90 A.D.3d 696, 698-700 (2d Dept 2011).  This rule is intended to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential. Id.

Here, Star alleges it terminated TRF for cause related to violations of the Rules of Professional Conduct.  (See ECF Doc. No. 102 ¶¶ 69-101).  Thus, as in Baugher, Star may proceed with an independent claim for forfeiture of legal fees.

TRF Defendants argue that the allegations related to their violations of Rules 1.5, 1.8, 1.9, and 3.3 of the Rules of Professional Conduct are conclusory but they fail to explain how those allegations are conclusory.  Indeed, their argument that Star's claims are conclusory is, itself, conclusory. Moreover, a review of the allegations establishes that they are sufficiently stated.

In this regard, Star sufficiently alleges a violation of Rule 3.3 of the Rules of Professional Conduct as it alleges that TRF and TRF Partners made a false statement of material fact in the Florida Action when they stated in a declaration that "Koufakis paid the $5,000 retainer" even though Star never paid the retainer, and again violated Rule 3.3 when they failed to correct this false statement.  (See ECF Doc. No. 102 ¶ 100).

TRF Defendants argue that they did not violate Rule 3.3 because Star cannot assert a valid cause of action for fraudulent misrepresentation.  However, establishing a claim for fraudulent misrepresentation is not a precondition to a violation of Rule 3.3.   A violation of Rule 3.3 occurs when, *inter alia*, a lawyer knowingly makes a false statement of fact or law to a tribunal or fails to

correct a false statement of material fact or law previously made to the tribunal by the lawyer.  Star has sufficiently alleged a violation of Rule 3.3.

TRF Defendants then argue that Star's allegations that TRF Defendants violated Rule 1.5 lacks merit purportedly because Star "acquiesced" in TRF's billing practices by paying the invoices.  However, as discussed *supra*, Star alleges that the invoices provided by TRF provided little indication as to what work was done and for what purpose; that Star relied on TRF's and Friedberg's expertise; and that it was only after Star retained new counsel who analyzed the file when Star was first made aware of the lack of work that TRF and Friedberg actually performed and of the excessive and fraudulent overbilling.  (See ECF Doc. No. 102 ¶¶ 55, 72, 80-81). Thus, it cannot be determined as a matter of law that Star "acquiesced." Rather, the facts as alleged establish that Star did not and could not know the extent of TRF's work until subsequent counsel analyzed the file.

In any event, assuming *arguendo* that Star acquiesced in TRF's billing practices by paying the invoices (which it did not), that would not absolve TRF Defendants from their violation of the Rules of Professional Responsibility.

With regard to Rule 1.9 of the Rules of Professional Conduct, TRF Defendants argue that "Star fails to allege, with any specificity, whether TRF Defendants entered into a representation of an adverse client or if TRF Defendants used any confidential information to the advantage of Star, and that Star fails to allege if the statement [Star] paid the $5,000 retainer was confidential." This argument misses the mark entirely.

Star alleges that TRF represented <u>itself</u> in the Florida action that was commenced against TRF, and in that action, TRF took a position that was directly adverse to its former client, Star. In a declaration signed by Friedberg, TRF claimed, falsely, that Star paid the $5,000 retainer

agreement required under the 2019 Rosenfield Engagement Letter.  (See ECF Doc. No. 102 ¶¶ 83, 89).  Moreover, Star alleges that TRF knew that this statement was false, was given the opportunity to correct this false statement, but, egregiously, failed to do so because such correction would imperil the success of its motion to dismiss.[4]  (See ECF Doc. No. 102 ¶¶ 94-98).  What's worse, Rosenfield relied on TRF Defendants' false statement and thereafter commenced the instant action, naming Star as a defendant, to Star's gross prejudice.  (See ECF Doc. No. 102 ¶ 99).[5]

TRF Defendants cite the principle in Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 56 A.D.3d 1 (1st Dept 2008) that a violation of the ethical constraint against dual representation does not, without more, support a claim for recovery of damages, but they do not argue, nor can they, that Star does not allege that it was damaged by TRF Defendants' violation of Rule 1.9.  Indeed, Star alleges (and it is obvious) that, but for TRF Defendants' violation of Rule 1.9, Star would not be a defendant in the instant action.  (See ECF Doc. No. 102 ¶ 99).

TRF Defendants also argue that Star only alleges it paid fees to TRF and not to Friedberg and Rodes, and therefore, this claim must be dismissed as against Rodes and Freidberg.  However, under Partnership Law § 26(c), partners are personally and fully liable and accountable for any wrongful act or misconduct committed by them, or by any person under their direct supervision and control, while rendering professional services in their capacity as a partner.  See N.Y. Partnership Law § 26(c); Salazar v. Sacco & Fillas, LLP, 114 AD3d 745 (2d Dept 2014). Therefore, TRF Partners are personally liable for disgorgement of all fees Star paid to TRF, a partnership.

---

[4] This conduct also egregiously violates its duties to the tribunal under Rule 3.3.

[5] Star does not assert a violation under Rule 1.9(c); therefore, it is not required to allege that the statement Star paid the $5,000 retainer was confidential.

Lastly, Star has sufficiently alleged facts to warrant punitive damages.  Star alleges that its lawyers fraudulently overbilled it.    TRF Defendants, as lawyers, represent other parties who are comprised of the general public.   Moreover, Star alleges TRF Defendants' conduct was outrageous, wanton, and malicious.

Accordingly, Star's disgorgement of legal fees claim is sufficiently pled and the motion must be denied.

## **CONCLUSION**

Based on the foregoing reasons, Star respectfully requests that the Court deny TRF Defendants' motion to dismiss Star's cross-claims and third-party claims and for all such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
         November 28, 2022

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Jamie S. Felsen, Esq.
Jamie S. Felsen, Esq.
Michael C. Mule, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michaelmule@mllaborlaw.com

*Attorneys for Star Auto Sales of Bayside, Inc. d/b/a Star Toyota of Bayside, Star Auto Sales of Queens, LLC d/b/a Star Subaru, Star Hyundai LLC d/b/a Star Hyundai, Star Nissan, Inc d/b/a Star Nissan, Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge, Star Auto Sales of Queens County LLC d/b/a Star Fiat, and Star Auto*

19

*Sales of Queens Village LLC d/b/a Star Mitsubishi*